**GESELL et al. v. UNITED STATES.**

(Circuit Court of Appeals, Eighth Circuit.
August 19, 1924.)

No. 6098.

1. **Forgery** ☞7(1)—**Statutes denouncing forgery and uttering of forged obligations and securities of United States refer to securities and obligations defined in other statute.**

The obligations and securities of the United States referred to in Criminal Code, §§ 148, 151 (Comp. St. §§ 10318, 10321), making it a crime to forge and to utter a forged obligation or other security of the United States, are the obligations and securities defined in section 147 (Comp. St. § 10317).

2. **Criminal law** ☞13—**Criminal statutes defining offenses should be strictly construed.**

Criminal statutes defining offenses should be strictly construed.

3. **Forgery** ☞34(6)—**One uttering forged assignment of genuine obligation of United States cannot be convicted of uttering forged "obligation or security."**

One possessing and uttering forged assignment of a genuine obligation of the United States could not be convicted of uttering or having possession of a forged obligation or security of the United States, in violation of Criminal Code § 151 (Comp. St. § 10321), in view of section 147 (Comp. St. § 10317).

[Ed. Note.—For other definitions, see Words and Phrases, Obligation or Other Security.]

In Error to the District Court of the United States for the District of Minnesota; Tillman D. Johnson, Judge.

Howard E. Gesell and Nels B. Nelson were convicted of possessing and uttering forged obligations of the United States, and they bring error. Reversed.

Victor L. Power and George S. Power, both of Hibbing, Minn., and John Ott and Schall & Conley, all of Minneapolis, Minn., for plaintiffs in error.

Lafayette French, Jr., U. S. Atty., and William Anderson, Asst. U. S. Atty., both of St. Paul, Minn.

Before SANBORN and LEWIS, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. The defendants were indicted in the district of Minnesota in two counts for alleged violation of section 151, Criminal Code of the United States (Comp. St. § 10321). In count 1 it is alleged that "on the 1st day of March, 1921, in the city of Minneapolis, * * * and district of Minnesota, * * * Howard E. Gesell and Nels B. Nelson feloniously did keep in their possession one falsely forged obligation and security of the United States of the tenor following, that is to say:

" '4¾%

" 'Convertible Gold Note     C 152386
    of 1922-1923

" '$500          $500

" 'The United States of America for value received promises to pay to Albert Lillo or registered assigns the sum of five hundred dollars, on May 20, 1923, and to pay interest on said principal sum from May 20, 1919, until the principal hereof shall be payable, at the rate of four and three-quarters per cent. per annum, payable on December 15, 1919, upon presentation and surrender of the interest coupon hereto attached, and thereafter to the registered holder semiannually on June 15 and De-

cember 15, and on May 20, 1923, at the Treasury Department, Washington, or, at the holder's option, at any agency or agencies in the United States which the Secretary of the Treasury may from time to time designate for the purpose. The principal and interest hereof are payable in United States gold coin of the present standard value. This note is one of a series of four and three-quarters per cent. convertible gold notes of 1922–1923, authorized by an act of Congress approved September 24, 1917, as amended, and issued pursuant to Treasury Department Circular No. 138, dated April 21, 1919, to which reference is hereby made for a statement of the further rights of the holders of notes of said series as fully and with the same effect as if herein set forth. All or any of the notes of this series may be redeemed, at the option of the United States, on June 15 or December 15, 1922, at par and accrued interest, as in said circular provided. This note does not bear the circulation privilege.

" 'Washington, May 20, 1919.

" 'Recorded:  BJ        Examined:  VE

" 'Carter Glass,

" 'Secretary of the Treasury.

" 'Houston B. Teehee,

" 'Register of the Treasury.

" 'Transferable on the books of the United States Treasury Department.  Gold note of the United States.

| Transfer | |
|---|---|
| For value received ...... assign to ...... the within registered note of the United States and hereby authorize the transfer thereof on the books of the United States Treasury Department. | |
| Albert Lillo | |
| Personally appeared before me the above named assignor, known or proved to me to be the payee of the within note and signed the above transfer acknowledging the same to be his free act and deed.  Witness my hand, official designation and seal. | Gold Note of the United States. |
| ...................................... [Signature attesting officer.] [Seal.] ...................... [Official designation.] Dated at ......, ......, 19... | |

" ' *        *        *        *        *        *        * '

"They, the said Howard E. Gesell and Nels B. Nelson, then and there, to wit, at the time and place of so keeping in their possession the said falsely forged obligation and security as aforesaid, well knowing the same to be falsely forged, and intending to utter and pass the same, and thereby to defraud the person or persons into whose hands the same should come through such uttering and passing, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the United States."

In the second count it is alleged that "on the 1st day of March, 1921, in the city of Minneapolis, * * * and district of Minnesota, * * * Howard E. Gesell and Nels B. Nelson, the identical persons named in the first count of this indictment, with intent to defraud one Albert Lillo, feloniously did utter and pass a certain falsely forged obligation and security of the said United States, of the tenor set out in count 1 hereof; they the said Howard E. Gesell and Nels B. Nelson then and there, to wit, at the time and place of so uttering and passing the last mentioned falsely forged obligation and security as aforesaid, well knowing the same to be falsely forged, contrary," etc.

No demurrer or motion to quash was interposed to the indictment, but at the close of all the evidence defendants' counsel moved the court for a directed verdict in favor of the defendants, on the ground that the evidence presented was insufficient to sustain a conviction for the offenses described in the indictment. There were other elements to the motion not necessary to be noticed here. The motion was overruled, the cause submitted, and a verdict of guilty returned, upon which judgment was pronounced. The defendants have appealed, assigning as error the denial of defendants' motion for a directed verdict.

The evidence introduced by the government tended to show: That Albert Lillo, on and prior to the night of September 14, 1920, was possessed of a number of registered convertible gold notes of the United States, aggregating in all the sum of $5,050, face value. That on the night aforesaid the safe in which Lillo kept the notes was blown open, and these and other valuables stolen. Some months later the defendant Nelson found the obligations, or some of them, so registered in Lillo's name, while burning brush along the highway, some 25 or 30 miles from where they were stolen. Nelson apparently made inquiries of different friends for a person named Albert Lillo, but failed to learn of such a man. Later on a trip to Minneapolis he met defendant Gesell and informed him of the finding of the notes. Nelson and Gesell were informed by a third party, a stranger to Nelson, but an acquaintance of Gesell, that he knew Lillo, and that a reward was offered for the re-

turn of the notes. Nelson later brought the notes to Minneapolis and delivered them to Gesell, on the understanding that they would be returned to Lillo through the stranger and the reward obtained and divided. In truth, the stranger did not know Lillo, and Nelson was evidently being deceived.

A short time after the notes were delivered to Gesell, he and Nelson endeavored to borrow $1,500 on them, but without success. They remained in the possession of Gesell. Neither at the time the notes were stolen nor at the time they were found did they bear the indorsement or assignment of Albert Lillo. A little later Gesell sold some of them, and gave Nelson a part of the money received from the sale. Some of the bonds were subsequently found in a bank in South St. Paul, with what purported to be Albert Lillo's signature filled in the blank purporting to assign the notes. There is no question but the notes or bonds were the genuine obligations of the United States; they were neither falsely made, forged, counterfeited, nor altered. The theory and contention of the government is that the allegations of the several counts in the indictment were sustained by proof that an assignment of the note or bond was forged.

The determination of the question here presented involves consideration of several sections of the Criminal Code. Chapter 7 of the Criminal Code (Comp. St. §§ 10317–10348) deals with "Offenses Against the Currency, Coinage, etc." Section 147 (Comp. St. 10317) defines certain securities and obligations of the United States dealt with in subsequent sections including sections 148 and 151 (Comp. St. §§ 10318, 10321). Section 147 is in the following language:

"The words 'obligation or other security of the United States' shall be held to mean all bonds, certificates of indebtedness, national bank currency, coupons, United States notes, Treasury notes, gold certificates, silver certificates, fractional notes, certificates of deposit, bills, checks, or drafts for money, drawn by or upon authorized officers of the United States, stamps and other representatives of value, of whatever denomination, which have been or may be issued under any act of Congress."

Section 148 is in the following language:

"Whoever, with intent to defraud, shall falsely make, forge, counterfeit, or alter any obligation or other security of the United States shall be fined not more than five

thousand dollars and imprisoned not more than fifteen years."

Section 151 is in the following language:

"Whoever, with intent to defraud, shall pass, utter, publish, or sell, or attempt to pass, utter, publish, or sell, or shall bring into the United States or any place subject to the jurisdiction thereof, with intent to pass, publish, utter, or sell, or shall keep in possession or conceal with like intent, any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than five thousand dollars and imprisoned not more than fifteen years."

It will be observed that section 148 covers and penalizes the act of falsely making, counterfeiting, or altering "any obligation or other security of the United States" with intent to defraud. The words "obligation or other security" are in themselves general terms, and are used in a series of sections relating to the same general category of offenses. Immediately preceding these sections, however, we find section 147, which with precision defines and quotes this very expression. This section enumerates the different classes of obligations and securities which the words quoted in said section and used in the succeeding sections, "shall be held to mean." These sections respectively were taken from sections 5413, 5414, and 5431 of the Revised Statutes of the United States.

[1, 2] Now we have pointed out that section 148 deals with the forging of the "obligation or security," and it will be noted that section 151 proceeds a step farther and, assuming the "obligation or security" to have been forged, penalizes one who may with like intent pass, utter, etc., or keep such forged "obligation or security" in his possession or conceal it. Now it would seem clear that in section 151 Congress was legislating with respect to the same class of "obligations and securities" as are defined in section 147, and that when an indictment charges either the forging of an "obligation or security of the United States," under section 148, or the doing of the things enumerated in section 151, with respect to a forged "obligation or security of the United States," with the intent specified, it is equivalent to an allegation charging the doing of the act with respect to some of the particular "obligations or securities" defined and included in section 147. Now section 147, after enumerating the particular "obligations and securities" which the quoted expression "shall be held to

mean," does not say "or any assignment or indorsement thereof," or use any equivalent expression. And we must not lose sight here of the fact that we are dealing with criminal statutes, and that in those portions of their contexts which define the offenses they should be strictly construed.

The Circuit Court of Appeals of the Fifth Circuit, in De Lemos v. United States, 91 Fed. 497, 33 C. C. A. 655, had under consideration a somewhat similar, yet distinguishable, case. The indictment and ruling in that case, however, involved a cardinal principle of criminal pleading which we must deal with here. The indictment in the De Lemos Case, supra, was in three counts. Counts 1 and 2 were intended to be laid under section 5414, Rev. Stats. U. S. (now Criminal Code, § 148), and count 3 was intended to be laid under section 5431, Rev. Stats. U. S. (now Criminal Code, § 151). Count one charged:

"That on the 28th day of May, A. D. 1895, in said Middle district of Alabama, * * * Ben De Lemos did unlawfully, feloniously, and falsely make and forge a certain obligation of the United States, to wit, a draft for money, to wit, for the sum of six hundred sixty-eight ⁴⁰/₁₀₀ dollars, drawn by an authorized officer of the United States, to wit, by D. A. Carpenter, United States pension agent, upon the assistant treasurer of the United States at New York, N. Y., and which said falsely made and forged obligation of the United States is in the words following, to wit:

" 'United States Pension Agency, No. 889049.

" 'Knoxville, Tenn., May 22, 1895. 189.

" 'Assistant Treasurer of the United States, New York, N. Y.:

" 'Pay to the order of Thomas Cook six hundred sixty-eight ⁴⁰/₁₀₀ dollars, $668.40.

" 'D. A. Carpenter, Interior.

" 'U. S. Pension Agent.

" 'By J. M. Cates, Clerk.

" 'This check should be presented for payment within 90 days.'

"And on the back of said falsely made obligation of the United States were indorsed the words and figures following, to wit:

" 'Pay to Ben De Lemos.

" 'Thomas X Cook, Payee.
his
mark

" ' * * * * * * * ' "

"And the said obligation of the United States was then and there falsely made and forged, in this, to wit, that he, the said Ben De Lemos, did then and there falsely make and forge the name of the payee of the said draft, to wit, the words, 'Thomas X Cook,' with the intent then and there and thereby to defraud, contrary," etc.
his
mark

Count 2 of the indictment charged:

"That at the time and place aforesaid, and within the jurisdiction aforesaid, Ben De Lemos did falsely make and forge a certain obligation of the United States, to wit, a certain draft of money, which said draft is set forth hereinabove, in the first count of this indictment, and which said obligation he, the said Ben De Lemos, did falsely make and forge, in this, to wit, that the said Ben De Lemos did then and there falsely make and forge an indorsement upon the said draft in the following words, to wit:

'Pay to Ben De Lemos. Thomas X Cook,' with the intent then and there and thereby to defraud, contrary," etc.
his
mark

Count 3 of the indictment charged:

"That at the time and place aforesaid, and within the jurisdiction aforesaid, * * * Ben De Lemos did unlawfully, knowingly, and feloniously pass, utter, and publish as true and genuine a certain falsely made and forged obligation of the United States, to wit, a certain draft drawn by D. A. Carpenter, an officer of the United States, authorized to draw the said draft, to wit, a United States pension agent, at Knoxville, in the state of Tennessee, which said draft was dated May 22, 1895, payable to the order of Thomas Cook, for the sum of six hundred sixty-eight ⁴⁰/₁₀₀ dollars, and which said draft was according in the tenor following: [Draft copied as above.]

"And he, the said Ben De Lemos, although he well knew the said draft and obligation was falsely made and forged, in this, that the name of the payee thereof, to wit, the words 'Thomas X Cook,' were forged in the indorsement thereon and thereto, yet he, the said Ben De Lemos, did utter, pass, and publish the said obligation and draft, knowing the said indorsement thereon to be falsely made and forged, with the intent then and there and thereby to defraud," etc.
his
mark

The defendant De Lemos interposed a demurrer which was overruled. The defendant was put on trial and convicted. We now quote from the opinion of the court:

"We deem it sufficient for the decision of this cause to consider only the first two

specifications of error, which read as follows:

" 'First. The circuit court erred in overruling the demurrer of the defendant. Second. The court erred in holding that the indictment described any offense against the United States, punishable under the laws thereof.'

"The acts which the prosecutor intended to aver in this cause are that the plaintiff in error, having obtained possession of a genuine government draft, forged an indorsement thereon, and that he subsequently uttered the draft with the forged indorsement upon it. The counsel for the plaintiff in error contended in their oral argument that there is no law of the United States punishing such acts. We are clear that the contention is without force. A charge could be laid for the forgery under section 5414, Rev. St. U. S., which denounces the offense of forging obligations or securities of the United States; and a charge could also be laid under section 5421, Id., which denounces the offense of forging writings for the purpose of obtaining money from the United States. For uttering a genuine government draft with a forged indorsement, a charge could be laid under section 5431, Id. The prosecutor intended to lay the charges contained in counts 1 and 2 under section 5414, Rev. St. U. S., and those two counts are said to be for one and the same offense. The charge contained in count 3 was intended to be laid under section 5431, Id.

"To have properly laid the charge for the forgery under section 5414, the pleader should have distinctly charged that the genuine draft, with the forged indorsement upon it, constitute together a forged obligation of the United States. But we find in count 1, and in counts 2 and 3 as well, a clear averment that the draft itself, without the indorsement, is forged. This, of course, is untrue, and is plainly repugnant to the further averment in the count that the forgery consists in the false making of the indorsement. Count 2, besides reiterating the repugnant averment that the draft itself is forged, is additionally defective because it does not set out the draft, but merely refers to its setting out in count 1, which count is itself fatally defective, as we have just shown. See 1 Bish. Cr. Proc. (3d Ed.) § 431. Count 3 is similarly defective, because of the repugnant averment that the draft itself is forged. Furthermore, the scienter is defectively averred in count 3. There may also be other material defects in the three counts. It is plain that counts 1

and 2 cannot be held good, under section 5421 (Comp. St. § 10193), which would have required the laying of the charge on the indorsement, and not on the draft, and should have otherwise conformed to the requirements of that statute.

"We are of opinion that the demurrer should have been sustained, and the indictment quashed."

It will be observed that the court clearly held that the three counts were fatally defective, because it was alleged that the draft itself was forged, and that a subsequent allegation that the forgery consisted in the false making of the indorsement was repugnant. The essence of the decision is that there was a clear distinction between alleging a draft to be forged and alleging an indorsement of a genuine draft to be forged. We think this distinction sound and conformable to the fundamental principles of criminal pleading.

It will be further observed that the court expressed the opinion that a charge could have been laid in that case under section 5421, Rev. Stats. U. S. (now Criminal Code, § 29), and with this opinion we entirely agree. We are further of the opinion that, in the present case in the light of the facts disclosed on this record, a charge could and should have been laid under that section. Said section 29 is in the following language:

"Whoever shall falsely make, alter, forge, or counterfeit, or cause or procure to be falsely made, altered, forged, or counterfeited, or willingly aid or assist in the false making, altering, forging, or counterfeiting, any deed, power of attorney, order, certificate, receipt, contract, or other writing, for the purpose of obtaining or receiving, or of enabling any other person, either directly or indirectly, to obtain or receive from the United States, or any of their officers or agents, any sum of money; or whoever shall utter or publish as true, or cause to be uttered or published as true, any such false, forged, altered, or counterfeited deed, power of attorney, order, certificate, receipt, contract, or other writing, with intent to defraud the United States, knowing the same to be false, altered, forged, or counterfeited; or whoever shall transmit to, or present at, or cause or procure to be transmitted to, or presented at, any office or officer of the government of the United States, any deed, power of attorney, order, certificate, receipt, contract, or other writing, in support of, or in relation to, any account or claim, with intent to defraud the

United States, knowing the same to be false, altered, forged, or counterfeited, shall be fined not more than one thousand dollars and imprisoned not more than ten years."

[3] Now had the pleader charged that the said Howard E. Gesell and the said Nels B. Nelson having obtained possession of a genuine obligation of the United States, to wit, a registered convertible gold note, etc., did falsely forge an order, contract and writing on the back thereof, to wit, the words (setting out the forged indorsement), for the purpose of obtaining, receiving and enabling any other person to obtain or receive from the United States, etc., a sum of money, etc.; or had the pleader charged that the said Howard E. Gesell and the said Nels B. Nelson having obtained possession of a genuine obligation of the United States, to wit (describing it), did publish as true a false and forged order, contract and writing on the back thereof, to wit (setting out the indorsement), with intent to defraud the United States, knowing the same to be false and forged, certainly a charge would have been laid under said section 29, to which the proof in this case would have conformed. True, the court further said in the De Lemos Case, supra, that a charge in that case could have been laid for forgery under section 5414, Rev. Stats. U. S. (now Criminal Code, § 148), which denounces the offense of forging obligations or securities of the United States; and the court further said that a charge could have been laid for uttering under section 5431, Rev. Stats. U. S. (now Criminal Code, § 151).

With this latter conclusion of the court in the De Lemos Case we are not prepared to agree. In this connection the court a little further on in the opinion pointed out the necessity of distinctly charging that the genuine draft with the forged indorsement upon it constitute together a forged obligation of the United States. Now, of course, if by mere assertion or averment the assignment, which before was no part of the draft, could be made a part of that instrument, then the charge could be laid under section 5414, Rev. Stats. U. S. (now Criminal Code, § 148), and by parity of reasoning in the present case the charge could be laid under Criminal Code, § 151. But this all assumes the identity of the original complete obligation and the independent assignment thereof. We think this was not the intention of the Congress when it framed these three sections, each so well adapted to fill its peculiar niche, and, when taken together, so inclusive of the field under consideration,

and especially in view of section 5413, Rev. Stats. U. S. (now Criminal Code, § 147), which so clearly and precisely defines and enumerates the particular instruments which the words "obligation or other security of the United States," then being considered, "shall be held to mean."

It follows that there is a fatal variance between the allegations of each count of the indictment and the proof adduced in support thereof, and that the defendants' motion for a directed verdict should have been sustained. For this error the case must be and is reversed.