UNITED STATES of America,
Plaintiff-Appellee,

v.

Martin HENDERSON, Defendant-
Appellant.

No. 13452.

United States Court of Appeals
Seventh Circuit.

Jan. 22, 1962.

Concurring Opinion Jan. 31, 1962.

Hugh Hafer, Seattle, Wash., Richard M. Goldberg, Milwaukee, Wis., for appellant.

William J. Mulligan, Asst. U. S. Atty., Milwaukee, Wis., James B. Brennan, U. S. Atty., Milwaukee, Wis., for appellee.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

Martin Henderson, defendant-appellant, was convicted, following a jury trial, on an information charging him with knowingly forging the endorsement of the payee on a United States Treasury check in violation of 18 U.S.C.A. § 495. He was sentenced to imprisonment for 180 days. Defendant appealed and contends that the District Court erred in denying his motions challenging the array of petit jurors and to dismiss the information, each of which was reasserted in a motion in the alternative for a new trial or acquittal.

The main contested issues which emerge from defendant's appeal are:

(1) Whether the clerk and the jury commissioner may consider intelligence level as indicated by a formal eighth grade education as a factor in the selection of the names of persons to be placed in the box from which the names of jurors are publicly drawn.

(2) Whether forgery of a United States Treasury check payable on account of disability resulting from injury incurred in the line of active military duty is an offense within the purview of 18 U.S.C.A. § 495.

The manner of the selection of the persons whose names were placed in the box from which the panel was drawn for the trial of the defendant was stipulated. The clerk of the court and the jury commissioner annually send a questionnaire

to each of approximately 800 prospective jurors.[1] Prospective jurors are required to answer the questionnaire in their own handwriting. It asks, among other things, the person's occupation, length of time of present employment or business, and ability to read, write and understand English. It requires that the number of years of primary, high school and college education be indicated by the circling of appropriate figures on the form.

The returned executed questionnaires are examined and separated into two groups as acceptable or unacceptable by either the commissioner or the clerk and given to the other for agreement or disagreement. In the event of disagreement, the particular questionnaire is jointly reexamined and a joint decision reached. In determining whether to place the name of the person in the jury box the decision is made on the basis of the information disclosed by the questionnaire. Spelling, grammar, penmanship, failure to answer any question, and the nature and length of employment are all considered. A person may be accepted if the nature and length of employment indicate responsibility, ability and experience, regardless of the amount of formal education. The questionnaire is the sole basis for estimating the intelligence of the prospective juror and significant consideration is given to the amount of formal education for the purpose of obtaining more intelligent jurors. In connection with the selection of persons with less than an eighth grade education, if relatively few names are needed to fill the box, the clerk and commissioner become more selective and are more likely to select those who have had more formal education. At the time of defendant's trial there were some jurors whose names were in the box and some on the jury panel who had less than an eighth grade education.

The defendant contends that in the selection of prospective jurors for the Eastern District of Wisconsin, which embraces the metropolitan Milwaukee area, whether such persons have completed eight grades of formal education may not be considered. He argues that in the enactment of 28 U.S.C.A. § 1861 [2] Congress has imposed a "literacy" standard which precludes inquiry into the intelligence of prospective jurors and that the use of the intelligence criteria here employed by the clerk and commissioner in the selection process destroys the uniformity intended by Congress, violates the statute, and results in an exclusion of an important segment of the community, precluded by the Sixth Amendment to the United States Constitution, and which voids defendant's conviction.

The government disputes that intelligence may play no part in jury selection and points to the fact that until September 1, 1948 qualifications and exemptions of federal jurors were dependent upon the laws of the state where the fed-

1. The method employed to obtain these names is not in issue.

2. The provisions of 28 U.S.C.A. §§ 1861 and 1864 here pertinent are:

§ 1861 "Any citizen of the United States who has attained the age of twenty-one years and who has resided for a period of one year within the judicial district, is competent to serve as a grand or petit juror unless—

"(1) He has been convicted in a State or Federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty.

"(2) He is unable to read, write, speak, and understand the English language.

"(3) He is incapable, by reason of mental or physical infirmities to render efficient jury service."

§ 1864 "The names of grand and petit jurors shall be publicly drawn from a box containing the names of not less than three hundred qualified persons at the time of each drawing.

"The jury box shall from time to time be refilled by the clerk of court, or his deputy, and a jury commissioner, appointed by the court.

*     *     *     *     *

"The jury commissioner and the clerk, or his deputy, shall alternately place one name in the jury box without reference to party affiliations, until the box shall contain at least 300 names or such larger number as the court determines. *   *"

eral district court sat and that nineteen states imposed qualifications of "intelligence, fair education".[3] In 1948, 28 U.S. C.A. §§ 1861 and 1864 were enacted. Except for disqualification for certain criminal convictions, § 1861 made every citizen meeting the age and residence requirements competent for jury duty provided that he was able to read, write, speak and "understand the English language", that he was not incapable to render efficient jury service because of mental or physical infirmities, and that he was not incompetent under state law. In 1957 Congress removed the provision requiring competency under state law from § 1861 as a part of civil rights legislation[4] designed to attain objectives not inconsistent with recognition that a reasonable level of intelligence is appropriate, if not a requisite, to the rendition of efficient service as a juror. And, that the goal of "efficient" service is an express objective of the statute is evidenced by its provision requiring rejection of persons incapable by reason of mental or physical infirmities of rendering "efficient jury service". Recognition that the statute envisions "efficient" service requires rejection of a conclusion that an intelligence level equated with mere literacy was intended to be imposed as a maximum standard to be employed by the clerk and the commissioner in the selection of persons pursuant to § 1864 whose names are to be placed in the box from which jurors are drawn.

■ And this view of the statute not only is in accord with its express provisions but is in harmony with the observation in Brown v. Allen, 344 U.S. 443, 474, 73 S.Ct. 397, 416, 97 L.Ed. 469 that no due process infirmity invalidates a jury source which "reasonably reflects a cross-section of the population suitable in character and *intelligence* for that civic duty". (emphasis supplied). And as was pointed out in United States v. Dennis, 2 Cir., 183 F.2d 201, 220, the theory that a jury must be a "cross-section" of the community "must be taken with some reserves" and the statute "presupposes some winnowing of those called". The "cross-section" contemplated is not an absolute. Frequently such complete representation would be impossible. Cf. Dow v. Carnegie-Illinois Steel Corporation, 3 Cir., 224 F.2d 414, 423. But it does mean that prospective jurors shall be selected by court officials without the use of irrational or self-imposed standards.

■ The record before us discloses that the criteria here employed by the clerk and the commissioner in selecting persons whose names were placed in the box are not in themselves unreasonable or violative of the letter or spirit of the statute. Their use did not constitute or result in arbitrary exclusion. Lack of a formal eighth grade education did serve to require closer scrutiny of the nature of the person's employment to ascertain if it indicated such responsibility, ability or experience as evidenced a similar degree of intelligence. And, it was only where relatively few names were needed that persons who had more formal education were likely to be preferred for selection. Sole reliance on a questionnaire is not the most ideal method for the selection of prospective jurors. But the criteria here employed in the selection were not only practical, under the circumstances,[5] but did serve to confirm the required ability to read, write, speak and understand the English language and indicate the existence of an intelligence level which certainly is not unreasonable[6] as a requirement for the selection of efficient jurors.

3. Report of the Committee on Juror Selection of the Judicial Conference of the United States (1942) pp. 33–35.

4. The Civil Rights Act of 1957, 71 Stat. 634, 638.

5. Cf. Hoyt v. Florida, No. 31 Oct. Term 1961, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed. 2d 118.

6. Cf. Hernandez v. Texas, 347 U.S. 475, 478, 74 S.Ct. 667, 670, 98 L.Ed. 866. To "single out [a] class for different treatment not based on some reasonable classification" violates the guarantees of the Constitution.

The facts here present no arbitrary exclusion of the nature condemned in Smith v. Texas, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181; and Ballard v. United States, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181, cited and relied upon by the defendant. Nor do the criteria employed have the effect of excluding an important segment of the community here involved. The record shows that in such urban areas 82% of the adult population has at least an eighth grade education and 79% of male laborers meet this standard. And it is not contended, nor is there any evidence to indicate, that the criteria used were employed as a device or subterfuge to effect racial discrimination in the selection of prospective jurors or resulted in such discrimination— an exclusion expressly prohibited by 28 U.S.C.A. § 1863(c), and condemned in Smith v. Texas, supra.

Defendant has no constitutional or statutory right that "ignorance" be represented in the jury box. We are of the opinion that the District Court did not err in its rulings rejecting the challenge to the array.

We turn to consideration of the issues presented by defendant's motion to dismiss the information. Defendant's contention that the information does not state an offense to which 18 U.S.C.A. § 495 is applicable is without merit. The forgery of an endorsement on a government check is proscribed by § 495. Prussian v. United States, 282 U.S. 675, 679, 51 S.Ct. 223, 75 L.Ed. 610. The check involved in the instant case was in payment of a sum on account of disability resulting from injury incurred in the line of active military duty. By virtue of the express provisions of 38 U.S.C. (1952 Ed.) § 700 such payment on account of service-connected disability constituted "compensation" as distinguished from a "pension".

38 U.S.C. (1952 Ed.) § 128 [7] did not apply. § 128 was limited in application to "pension" checks. Cf. DeMaurez v. Squier, 9 Cir., 144 F.2d 564, 565. And, contrary to the contentions of defendants, 18 U.S.C.A. § 471 does not embrace forged endorsements. Prussian v. United States, supra. We are not persuaded by defendant's argument that the statutes unconstitutionally afford the executive department a multiple choice of varying penalties for an identical offense or are unconstitutionally vague as applied to defendant. The District Court did not err in sustaining the information.

Messrs. Hugh Hafer and Richard M. Goldberg represented the defendant, without compensation, by court appointment. The Court appreciates their services and commends them for the efforts put forth in the conduct and presentation of the defense of the defendant.

The judgment order of the District Court is affirmed.

Affirmed.

SCHNACKENBERG, Circuit Judge (concurring).

While I concur in Judge CASTLE'S opinion in this case, I make an exception to that sentence which holds that defendant has no constitutional or statutory right that "ignorance" be represented in the jury box. I do not find that defendant has made any contention for "ignorance" in the jury box. He has directed his attack to the requirements of a *literacy* test, i. e., a formal eighth grade education. In this case we are concerned with an intelligence test which is measured, in part, by *literacy*. A lack of literacy denotes *illiteracy*, not ignorance. An illiterate person may be a wise person. 28 U.S.C.A. § 1861 does not disqualify as jurors persons because they are ignorant; it disqualifies them because they are *illiterate*, i. e. unable to read, write, and understand the English language.

---

**7.** The offense was alleged to have been committed on or about May 31, 1957 and the references to §§ 128 and 700 are to those sections as they existed prior to the Act of September 2, 1958, Public Law 85–857, 72 Stat. 1105, revising and codifying the laws relating to veterans' benefits. 38 U.S.C.A. §§ 1 et seq., 101(13), 3502.