Franklin Bruce STREETT, Appellant,

v.

UNITED STATES of America, Appellee.

No. 17491.

United States Court of Appeals
Eighth Circuit.

April 28, 1964.

Curtis D. Forslund, Minneapolis, Minn., for appellant.

Leigh J. Gard, Asst. U. S. Atty., Minneapolis, Minn., for appellee; Miles W. Lord, U. S. Atty., Minneapolis, Minn., was with Leigh J. Gard, Minneapolis, Minn., on the brief.

Before VAN OOSTERHOUT, RIDGE and MEHAFFY, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Defendant Streett appeals from his conviction and sentence on all of the eleven counts contained in two indictments against him which were consolidated and tried to a jury. Concurrent sentences of ten years imprisonment were imposed.

Each count of each indictment charged a violation of 18 U.S.C.A. § 2314. Count I of case No. 4–63 Cr. 21, which is typical of all counts, reads:

> "That on or about the 27th day of September, 1962, at the City of Minneapolis, County of Hennepin, State and District of Minnesota,
>
> FRANKLIN BRUCE STREETT,
> aka FOREST WADE,
> aka WES STEVENS,
>
> did, with unlawful and fraudulent intent, cause to be transported in interstate commerce from Minneap-

olis, Minnesota, to New York, New York, a falsely made and forged security, to wit: 'N.C.B. Traveler's Check' No. 025–776–005, dated September 27, 1962, in the amount of $100.00, payable to Dr. M. A. Van Etta, signed Forest Wade and countersigned Forest Wade, and drawn on The First National City Bank of New York, knowing the same to have been falsely made and forged; in violation of Section 2314, Title 18 United States Code."

The other counts each involve a separate traveler's check varying in amount from $20 to $100. It is undisputed that each traveler's check was a genuine traveler's check drawn on The First National City Bank of New York; that such checks were purchased at a North Carolina bank by Forest Wade; that the traveler's checks were issued and delivered to Wade and that his genuine signature was placed upon each check at the appropriate place at the top of such check prior to delivery.

■ Based upon well-established principles that the evidence must be viewed in the light most favorable to the Government since the Government prevailed in the trial court, the evidence clearly establishes that Streett stole the traveler's checks from Wade at Rome, Georgia; that Streett took the checks with him to Minneapolis; that he forged the countersignature "Forest Wade" upon each of such traveler's checks; that he received the full value of each check from the various persons who cashed said checks; that Streett knew such checks were stolen; that he knew the countersignature on each check was forged; that he knew the instrumentalities of interstate commerce would be used in transporting the checks from Minneapolis to New York for payment; and that all such acts were done with an unlawful and fraudulent intent.

Title 18 U.S.C.A. § 2314 provides:

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more; or

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; or

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security, or tax stamps, or any part thereof—

"Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

"  *   *   *"

This appeal is based upon defendant's contention that the facts of this case show a forged endorsement of a genuine traveler's check rather than a forged security and that such forged endorsement was not included in the prohibition of paragraph 3 of § 2314. Such contention was raised in the trial court by motion to dismiss indictment and by motion for acquittal, which motions were overruled. Except for the monetary requirement of $5,000 there appears to be no question concerning the applicability of the first paragraph of § 2314. However, such paragraph does not apply as the se-

curities did not reach $5,000 in value. Hence, the Government must bring this case under paragraph 3 within the statutory language, "falsely made, forged, altered, or counterfeited securities."

The indictment narrows the field down to falsely made and forged securities. These terms have been defined and distinguished by the court in Pines v. United States, 8 Cir., 123 F.2d 825, 828, as follows:

"Manifestly, the words 'altering' and 'counterfeiting' could refer only to a crime based upon a preexisting genuine instrument. Forgery, however, does not necessarily carry such presumption but indicates that there is a genuine or real obligor in existence whose obligation has been simulated. To 'falsely make' is a crime not of changing or forming an instrument to resemble an existing genuine instrument or to represent that it is the act of a genuine and existing obligor, but rather to make an instrument which has no original as such and no genuine maker whose work is copied, although in form it may resemble a type of recognized security."

Thus it is apparent that the real issue is whether the traveler's checks here involved are forged securities within the meaning of such term as it is used in § 2314.

The Government contends that the acts of forgery committed by the defendant in placing the countersignature upon the traveler's checks were the very acts necessary to make them negotiable, and since the countersignature was not that of the purchaser, the checks were therefore forged securities. On the other hand, defendant argues that only the endorsement was forged, not the security itself which was complete prior to the countersignature, and that forged endorsements are not included within the coverage of the statute.

The distinction between a forged security and a forged endorsement was recognized by this court in Gesell v. United States, 8 Cir., 1 F.2d 283, and Lewis v. United States, 8 Cir., 8 F.2d 849, and later by the Supreme Court in Prussian v. United States, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610. In the Prussian case the defendant had been indicted under §§ 29 and 148 of the Criminal Code for forging the endorsement on a United States Treasury Draft. As evidenced by the following quotation, § 148, which is now 18 U.S.C.A. § 471, contained language very similar to the relevant phrase in § 2314, to wit, "falsely made, forged, altered, or counterfeited securities." In interpreting such language, the court in Prussian states:

"Under section 148, 'whoever, with intent to defraud, shall falsely make, forge, counterfeit, or alter any obligation or other security of the United States,' is guilty of a criminal offense. Section 147 provides: 'The words "obligation or other security of the United States" shall be held to mean all * * * checks, or drafts for money, drawn by or upon authorized officers of the United States.' It is apparent that the draft drawn on the Treasurer by an authorized officer is an 'obligation * * * of the United States' both in common parlance and by the express definition of section 147. But to extend the meaning of that phrase so as to embrace the indorsement on the government draft is to enlarge the statutory definition, and would be possible only by a strained construction of the language of sections 147 and 148, inadmissible in the interpretation of criminal statutes, which must be strictly construed. See Fasulo v. United States, 272 U.S. 620, 47 S.Ct. 200, 71 L.Ed. 443; United States v. Salen, 235 U.S. 237, 35 S.Ct. 51, 59 L.Ed. 210.

"The writing described in the indictment, when issued by the drawer, was a check or a draft. The added indorsement was in itself neither a check nor a draft. We need not stop to consider the argument advanced that the obligation upon the draft

does not become complete until it is indorsed, see Hamil v. United States, supra, p. 371 for it overlooks the circumstance that the meaning of 'obligation' in section 148 is narrowed by the definition in section 147 to specifically enumerated written instruments, including checks or drafts for money, which are complete, as such, within the statutory definition and in common understanding, at least when issued to the payee by an authorized officer of the government. The indorsement was at most the purported obligation of the indorser, not of the United States, and a purported transfer of the title of the draft to the indorsee. In neither aspect was the indorsement itself an obligation of the United States as defined by section 147, or such a part of the draft as to constitute the forging of the indorsement a forgery of the draft." 282 U.S. 675, 677–678, 51 S.Ct. 223, 224, 225, 75 L.Ed. 610.

After holding that the endorsement was not part of the security and therefore not within § 148, the Court upheld the conviction by construing the forged endorsement as falling within § 29's (now § 495's) catch-all phrase "other writing, for the purpose of obtaining or receiving * * * from the United States * * * any sum of money." A comparable catch-all phrase does not exist for non-governmental transactions.

The Government attempts to explain away the applicability of the Prussian case by asserting that the sole reason why the forgery was not covered under § 148 was because the endorsement was not an obligation of the United States which was intended to be protected, but rather was merely the obligation of the person whose signature was forged—an individual—who was not intended to be protected. However, this appears to be too restrictive an interpretation of the Court's reasoning. The Court clearly held that the endorsement was not "such a part of the draft as to constitute the forging of the indorsement a forgery of the draft." 282 U.S. 675, 678, 51 S.Ct. 223, 224, 75 L.Ed. 610.

The reasoning of the Prussian case has been recognized in many subsequent cases. See Danielson v. United States, 9 Cir., 321 F.2d 441; Rogers v. United States, 5 Cir., 304 F.2d 520 (dissenting opinion); United States v. Henderson, 7 Cir., 298 F.2d 522; Carr v. United States, 6 Cir., 278 F.2d 702; Webster v. United States, 8 Cir., 59 F.2d 583. The government objects to the relevance of these cases in that they all are concerned with the protection of the United States' securities. Nevertheless, the objective being sought here is to discover the scope of § 2314, and authoritative court interpretations of a statute bearing strikingly similar language would appear to be pertinent here.

The legislative history supports the interpretation of the statute urged by defendant. Section 2314 has its origin in the National Stolen Property Act of May 22, 1934, ch. 333, 48 Stat. 794. As originally enacted, the statute did not extend to interstate transportation of forged securities, but only to interstate transportation of, *inter alia*, stolen securities of the value of $5,000 or more. ¶ 1 of § 2314. Paragraph 3 extending coverage to "falsely made, forged, altered, or counterfeited" securities, regardless of value, was added in the amendment of August 3, 1939, ch. 413, § 1, 53 Stat. 1178, eight years after the Supreme Court had held in Prussian that such language does not cover forged endorsements.

The report on the amendment by the Senate Committee on the Judiciary, S. Rept.No.674, 76th Cong., 1st Sess. (1939), was a two page document incorporating and consisting mostly of two letters from the Attorney General. The second letter, dated May 5, 1939, stated:

"The principal purposes of the pending bill are to extend the existing law to property that has been embezzled, and also to forged or counterfeited securities.

"Studies of the desirability of extending this legislation to the transportation of forged or counterfeited securities in interstate or foreign commerce have led the Department to the conclusion that in respect to such cases the minimum amount of $5,000 serves no purpose, and that accordingly, it would be best to provide that such transportation be a criminal offense irrespective of the value of the forged, or counterfeited certificates. The reasons leading to this conclusion are that criminals who engage in forging or counterfeiting certificates do not ordinarily subject themselves to the hazards involved in such a nefarious undertaking, except for the purpose of multiplying the forged certificates on a large scale. *For example, while a single act of transportation may perhaps involve a forged traveler's check of a small denomination or a forged stock certificate for a few shares, the probability is that the person who manufactured the plate from which the traveler's check or certificate was printed produced a large number of duplicates of the same fraudulent document.* Otherwise, it would not have been worth while for him to go to the trouble and expense of purchasing the necessary tools and engraving the plate employed in accomplishing his criminal purpose. It would appear therefore, that the transportation of this type of contraband articles is entirely different from the transportation of stolen property." (Emphasis added.)

Such legislative history indicates an intention to extend the coverage of § 2314 in order to prohibit the actual false making or reproducing of the securities.

The Government's reliance upon United States v. Sheridan, 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359, is misplaced. While it is true Sheridan holds that paragraph 3 of § 2314 reaches small as well as large makers of forged instruments as is evidenced by the absence of the $5000 lim-

itation, the securities there involved were checks and the Court found that the checks themselves (not just the endorsements) were forged and hence the forged checks clearly fell within the statutory description.

Congress could unquestionably have broadened the statute to cover forged endorsements. Congress has not expressly covered forged endorsements of genuine securities in the statute. The language of paragraph 3 is practically identical with that interpreted in Prussian. The interpretation problem confronting us here so clearly resembles that present in Prussian and the numerous Courts of Appeal cases including our own reaching the same result, that we feel the reasoning of such cases controls the result here. If Congress had desired to cover forged endorsements, it could easily have said so. As stated in Prussian, "But to extend the meaning of that phrase so as to embrace the indorsement on the government draft is to enlarge the statutory definition, and would be possible only by a strained construction of the language * * *, inadmissible in the interpretation of criminal statutes, which must be strictly construed." 282 U.S. 675, 677, 51 S.Ct. 223, 224, 75 L.Ed. 610.

It cannot be seriously questioned that the traveler's checks were complete as securities prior to the forged countersigning, as was the government draft in Prussian. It was established by this court in Pines v. United States, 8 Cir., 123 F.2d 825, that traveler's checks are complete as securities prior to the countersigning. The defendant in that case was convicted under Title 18 U.S.C.A. § 415, the forerunner of § 2314, for transporting in interstate commerce traveler's checks issued from a fictitious bank. This court stated at p. 828 of 123 F.2d:

"As to the Travelers Cheques it is contended that they were not complete; hence, could not be unlawfully transported. A Travelers Cheque has the characteristics of a cashier's check of the issuing bank. As said by us in Mellon Nat. Bank v. Citizens

Bank & Trust Co., 8 Cir., 88 F.2d 128, 132.

" 'It is a bill of exchange drawn by the issuing bank upon itself and is accepted by the act of issuance, and the right of countermand as applied to ordinary cheques does not exist as to it.'

"The purported Travelers Cheques alleged to be fictitious were payable to order when countersigned by Joseph L. Lewis, whose signature purported to appear on them. As the obligation created by the issuance of a Travelers Cheque is complete as against the bank when issued, even though requiring the signature of the one to whom issued, it constituted a security within the purview of the statute because falsely made."

The Government argues that since Pines held that the traveler's checks in that case were covered by § 415, that case cannot be used as authority for holding that the checks in the instant case are not securities within the statutory meaning. However, the clear holding of the Pines case is that the checks came within the purview of the statute not because of the lack of genuineness of the obligation or because of forgery, but because the obligation itself, although a completed security, was falsely made. This distinction between a "falsely made" security and a "forged" security was recently recognized in Stinson v. United States, 5 Cir., 316 F.2d 554.

United States v. Petti, 2 Cir., 168 F.2d 221, supports defendant's position that the traveler's check is a complete security. The traveler's checks there involved had been stolen from an American Express Company office and had not been signed by the purchaser. The court held such checks to be securities. The case for traveler's checks in our present case to constitute securities is much stronger as we here have the additional factors that the checks were purchased and paid for and the first signature of the purchaser was properly affixed to the checks at time of delivery.

Both defendant and the Government rely upon dictum in Rowley v. United States, 8 Cir., 191 F.2d 949, where the traveler's checks which had been stolen from a bank to which they had been issued came into defendant's possession without a signature or countersignature of a payee. The Government cites the case for stating that a federal offense under the pertinent paragraph of § 2314 was charged and for defining forgery as "The fraudulent making or alteration of a writing to the prejudice of another man's rights." 191 F.2d 949, 950. Defendant relies upon the following language to show there was here involved a completed instrument:

"The obligation created by the issuance of the cheques as against the bank issuing them was complete when the checks were issued even though they required the signature of the one to whom issued and they constituted a security within the purview of the statute." 191 F.2d 949, 950.

The argument that it could not be a forged security if completed prior to the forgery was not presented before the court. But whatever import this case might have is negated by the fact that the defendant pleaded guilty and failed to appeal. This court affirmed the lower court's denial of a motion to vacate sentence on the procedural ground that after conviction a sentence is not open to collateral attack based upon a defective information or indictment except for exceptional circumstances not here present.

The Government also relies upon Berry v. United States, 5 Cir., 271 F.2d 775. The facts of this case are somewhat incomplete since neither the statute nor the amount of the traveler's check is mentioned, although the indictment referred to "falsely made and forged security," and evidently the defendant had forged the countersignature. The court states on p. 777 of 271 F.2d;

"[W]hat is in question here is not an ordinary check but a travelers check which, though it requires for

negotiation the signature of the person to whom it is issued, is, when issued and signed by the payee, complete against, and cannot be countermanded by, the issuer. Pines v. United States, 8 Cir., 123 F.2d 825. Such checks are cash, not upon the credit of the persons negotiating them but upon the credit of the issuer and the correspondence of the endorsement of the negotiator with the signature on the face of the instrument. In the case, therefore, of such instruments, the first negotiator, if not the person to whom the check was issued, is necessarily a forger."

Again the argument relied upon by the defendant in the instant case was not presented before the court. There is no dispute over the conclusion that the defendant is a forger within the meaning of common law—only that this was not a forged security under the paragraph in question of § 2314.

To summarize, it is our view that the traveler's checks involved were complete genuine securities at the time that they came into the hands of the defendant. While it is absolutely clear that defendant wrongfully forged the signature of Forest Wade upon each traveler's check, § 2314 does not reach forged endorsements but only reaches forged securities.

There is abundant evidence to support defendant's guilt of many unlawful acts including larceny and forgery of endorsements. However, we conclude with considerable reluctance that the defendant's guilt of transporting a forged security in violation of § 2314 is not established by the evidence.

We express our appreciation to Mr. Forslund who served as court-appointed counsel for his competent representation of the defendant on this appeal and for his excellent written brief and oral argument made upon behalf of the defendant.

Reversed and remanded.

RIDGE, Circuit Judge (dissenting).

Because I believe that one who forges the "countersignature" of the payee named in a "traveler's check" without authority to do so, with "fraudulent intent," and such "traveler's check" is thereby caused to be transported in interstate commerce is guilty under Section 2314, Title 18, U.S.C.A., I would affirm Streett's conviction.