**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Van Grover SIMPSON,**
**Defendant-Appellant.**

**No. 77-3304.**

United States Court of Appeals,
Ninth Circuit.

June 16, 1978.

Joe Reichmann (argued), Los Angeles, Cal., for defendant-appellant.

Mark O. Heaney, Asst. U. S. Atty. (argued), Los Angeles, Cal., for plaintiff-appellee.

Before WALLACE and SNEED, Circuit Judges, and EAST,* District Judge.

---

\* Hon. William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

1.  Paragraphs three and six of that section provide that:

   Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce

SNEED, Circuit Judge:

Simpson was convicted of violating 18 U.S.C. § 2314[1] upon a finding by the District Court that he had transported in interstate commerce stock certificates he had falsely endorsed. Appellant contends (1) that the stock certificates were not securities when transported because at that time they were valueless and (2) that a falsely endorsed stock certificate, in all other respects genuine, is not a "falsely made, forged, altered, or counterfeited" security within the meaning of the pertinent portion of the statute. We reject the first contention of the appellant but hold the second to be meritorious. Therefore, we reverse the appellant's conviction.

## I.

### Facts.

In August 1971, a number of stock certificates were stolen from an office in Boston, Massachusetts. In December of the same year the issuing companies cancelled the original certificates on their books and issued replacements. Some of the certificates were found by one Polk in the fall of 1971 lying near trash barrels. Through a series of dealings, the certificates ended up in the hands of Simpson. In June 1975, having falsely endorsed the certificates with the names of their true owners, Simpson sold them at a Dean, Witter office in California, for an amount in excess of $22,000. The sales were handled on a "same day" basis and Simpson received payment before Dean, Witter learned that the certificates had been cancelled. Simpson was convicted in a trial to the court of four acts of interstate transportation of forged securities.

any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; . . .

   Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

## II.

### *The Problem of Value.*

■ Appellant's first contention fails because the securities in question were not valueless. In so holding we do not wish to be understood as adopting the appellant's premise that a "valueless" security is no longer a security for the purposes of the third paragraph of 18 U.S.C. § 2314. We entertain substantial doubt about the correctness of that premise; but for the purposes of this case only, we will assume its validity. *Cf. Hall v. United States*, 372 F.2d 603 (8th Cir. 1967), *cert. denied*, 387 U.S. 923, 87 S.Ct. 2040, 18 L.Ed.2d 979 (1968) (dealing with the third paragraph of 18 U.S.C. § 2314); *but see United States v. Jones*, 450 F.2d 523 (5th Cir. 1971) (third paragraph); *cf. Merrill v. United States*, 338 F.2d 763 (5th Cir. 1964) (fifth paragraph); *United States v. Teresa*, 420 F.2d 13 (4th Cir. 1969), *cert. denied*, 397 U.S. 1063, 90 S.Ct. 1498, 25 L.Ed.2d 684 (1970) (semble) (first paragraph).

■■ The securities in this case had value at the relevant points in time. They could be considered valueless only if value means the hypothetical value in a market in which all parties have perfect knowledge. For the purposes of § 2314, however, value is defined as the "face, par, or market value, whichever is the greatest . . . ." 18 U.S.C. § 2311. This Circuit and others have recognized that, for the purposes of the first paragraph of § 2314, market value means actual market value and not a theoretical or intrinsic value; prices realized in actual sales are the best evidence of that market value. *See United States v. Drebin*, 557 F.2d 1316, 1328–29 (9th Cir. 1977); *United States v. Sarkisian*, 545 F.2d 1237, 1238 (9th Cir. 1976); *United States v. Anderson*, 532 F.2d 1218, 1225 (9th Cir.), *cert. denied*, 429 U.S. 839, 97 S.Ct. 111, 50 L.Ed.2d 107 (1976); *United States v. Nall*, 437 F.2d 1177, 1185–87 (5th Cir. 1971). Here appellants sold the securities for over $22,000. While it is not necessary here, as it is under the first two paragraphs of § 2314, to establish a $5,000 value for jurisdictional purposes, we hold that actual market value supplies the "value" which only for the purposes of this case we have assumed is an essential characteristic of a "security" as that term is used in 18 U.S.C. § 2314's third paragraph. Whether measured at the time the securities were stolen, when they were transported, or when they were sold, these securities had a substantial market value.

## III.

### *Forged Endorsements and Forged Securities.*

Appellant's second contention rests on more solid ground. Moreover, it would appear to be supported by the language of paragraph three. Forging and false making of a certificate imply, for example, the printing of a bogus certificate or, in the case of a blank check, filling in the amount, payee or other terms necessary to make it a complete security. Once the stock certificate is complete, it is a genuine instrument albeit capable of being improperly negotiated or transferred by means of forged endorsements. In this respect it differs not from an automobile transferred by means of a forged certificate of title. The security, like the automobile, remains genuine although transferred by means of a forgery.

None of the cases upon which the government relies support the proposition that the forging of an endorsement alone makes the security a forged security. In all the cases some other element necessary to complete the security was also forged, *e. g., United States v. Willis*, 528 F.2d 381 (9th Cir. 1976) (per curiam) (drawer's signature forged); *United States v. Bedgood*, 453 F.2d 988 (5th Cir.) (name and signature of payee on money orders forged); *United States v. Smith*, 426 F.2d 275 (6th Cir. 1970) (per curiam), *cert. denied*, 400 U.S. 868, 91 S.Ct. 110, 27 L.Ed.2d 107 (1971) (agent's symbol, amount, sender's name, payee's name and endorsement forged on money order); *Hall v. United States, supra*, (check with falsified name of drawer, payee and endorser). Nor may the government find solace in *Belle v. Unit-*

ed States, 537 F.2d 979 (8th Cir.), (per curiam), cert. denied, 429 U.S. 942, 97 S.Ct. 360, 50 L.Ed.2d 312 (1976). The opinion clearly points out that both the endorsement and the authorizing signatures were forged on the check at issue.

We agree with the Eighth Circuit in Streett v. United States, 331 F.2d 151 (8th Cir. 1964), in which the conviction of a defendant who had forged an endorsement on a traveler's check was reversed. It found that Congress had expressed in the third paragraph of 18 U.S.C. § 2314 an intention to reach only forged securities, not forged endorsements and that, once a security was complete, the addition of a forged endorsement did not serve to make it a forged security.

The legislative history of the 1968 amendment enacted to overturn the Streett result supports our holding with respect to the appellant's second contention. That amendment, now paragraph four of 18 U.S.C. § 2314, makes it unlawful for anyone to "transport [. . .] in interstate commerce any traveler's check bearing a forged signature." The House Judiciary Committee report notes that: ". . . the words 'falsely made . . .' have been construed to refer only to the making or execution of an instrument and not to cover a validly executed instrument bearing a forged countersignature. (Streett v. United States, 331 F.2d 151 (CA 8, 1964)). Prior to the Streett decision, the Department of Justice had taken the position that the countersignature on a traveler's check was within the proscription of section 2314." H.R.Rep. No. 1728, 90th Cong., 2d Sess., reprinted in (1968) U.S.Cong. & Admin. News, pp. 3654–55. Congress easily could have rejected the general principle upon which Streett rests; but, apparently responding to the concerns expressed by the traveler's check industry, see id., U.S.Cong. & Admin.News, pp. 3654–55, 3656–57 (1968), it chose to afford relief only for traveler's checks.

Even if this legislative history is disregarded, the application of the interpretive guideline inclusio unius est exclusio alterius suggests the conclusion that the transportation of securities with forged endorsements, other than traveler's checks, is not within the ambit of the third paragraph. The specific provision for forged endorsements of traveler's checks makes it easy to conclude that the provisions for forged or falsely made securities set forth in paragraph three excludes all false endorsements not included in paragraph four.

REVERSED.