UNITED STATES OF AMERICA,
Plaintiff,
vs.
Omar HARKKON a/k/a Frederick J. TYSON, Defendant

No. 81-368-C

United States District Court
Commonwealth of Massachusetts

February 18, 1982

Nelson Dong, U.S. Atty., counsel for plaintiff.
Owen Walker, counsel for defendant.
Wendie Gershengorn, counsel for defendant.

## MEMORANDUM

Caffrey, Ch. J. Defendant Omar Harkkon a/k/a Frederick J. Tyson was charged by the United States in a one-count indictment with violating paragraph 3 of 18 U.S.C. § 2314. The case was tried by this Court sitting without jury on January 25, 1982. At the close of the government's case, defendant moved for a judgment of

acquittal pursuant to Fed. R. Crim. P. 29, which the Court took under advisement, and then rested its case without presenting any evidence.

After considering all the evidence, I find and rule as follows:

The government's one-count indictment charges that defendant "did with unlawful and fraudulent intent cause to be transported in interstate commerce from Boston, Massachusetts to New York, New York falsely made, forged, altered and counterfeit securities, that is, American Express check numbered 81395477 dated June 8, 1981 having a value of more than five thousand ($5,000.00) dollars, knowing same to have been falsely made, forged, altered, and counterfeited, all in violation of Title 18, United States Code, Sections 2314 and 2." Paragraph 3 of 18 U.S.C. § 2314 applies to anyone who, "(1) with unlawful or fraudulent intent, (2) transports in interstate...commerce (3) any falsely made, forged, altered, or counterfeited securities...(4) knowing the same to have been falsely made, forged, altered or counterfeited...." The government, of course, must prove beyond a reasonable doubt the existence of all four elements of the statute before defendant can be found guilty of having violated it.

The evidence presented by the government proves, and I find, that about 4:30 p.m. on June 18, 1981, defendant using the name Frederick Tyson, opened a "NOW" account with the United States Trust Company (the bank) at its Copley Square branch by filling out an account information form and two signatures cards, and making an initial cash deposit of $25.00. Testimony given by Kathy Bourne, a member of the New England Telephone Company's Security Department, shows, and I hereby find, that the home and work telephone numbers given by defendant on the account information form were false. Donald King, director of personnel of the Boston Employment and Economic Policy Administration, sponsor of the "Boston Plan Y.E.S." program which the defendant listed as his employer on the account information form, testified that his organization had no record of having ever employed either a Frederick Tyson or a Omar Harkkon. After considering this evidence, I find that defendant provided deliberately false information to the bank regarding his claimed employment and telephone numbers.

Other evidence presented by the government shows that between 5:31 and 5:36 p.m. on June 18, 1981, a check numbered 81395477 and made out for the sum of $11,709.75 by the American Express Company Card Division of New York City to the order of Don Roth's Restaurant, Inc., was deposited into Frederick Tyson's account at the United States Trust Company's Alston branch. The face of the check reveals that it was payable through the Morgan Trust Company of New York City.

This check had two endorsements on its back. The first purports to be that of a Michael Roth, manager of Don Roth's Restaurant, Inc. Prior to trial, the parties stipulated that if Sidney D. Gronert, the assistant secretary for Don Roth Restaurants, Inc., were to testify, "he would testify that his company did not endorse or authorize any other person to endorse their (sic) name on said check, and that the endorsement of their name on the check is a forgery." I find that this endorsement is a forgery. The second endorsement purports to be that of Frederick J. Tyson. Both of these endorsements are in blank.

The parties also stipulated that "American Exress check number 81395477 traveled in interstate commerce from Boston, Massachusetts to New York, New York where it was paid." In order to find that defendant transported the check in question in interstate commerce, the Court need only find that he deposited an out-of-state check in a bank for collection. **Pereira v. United States,** 347 U.S. 1, 9 (1954). Although the evidence shows that defendant did not deposit the American Express check in person, the fact that the check was deposited by someone else into defendant's account, which he had opened

earlier that day by providing the bank with false information, is sufficient evidence for me to find, as I do, that defendant caused the check to be transported in interstate commerce. After considering all of the relevant evidence, I further find that defendant acted with the requisite fraudulent or unlawful intent in causing the check to be transported in interstate commerce. See, **United States v. Sheridan,** 329 U.S. 379, 386-89 (1946).

Jeffrey Tatro, an officer of the bank, testified that defendant's account was closed by the bank on June 19, 1981, the day after he opened it, because of a negative report the bank had received about defendant from the National Check Protection Service. A letter from the bank enclosing notice of the closing of defendant's account and a bank check refunding the initial $25.00 deposit was sent to the address defendant had given on the account information form as his home address. This letter was returned to the bank unopened.

I find that on August 14, 1981, defendant again visited the Copley Square branch of the bank where he was informed by Mr. Tatro that his account had been closed, and he was presented with two bank checks made out to him, one in the amount of his initial deposit, and the other in the amount of the American Express check which had been deposited in the account. These checks, which were introduced into evidence, each bear an endorsement on their reverse sides which purports to be that of Frederick J. Tyson.

As indicated above, the government must show beyond a reasonable doubt that the check in question was a "falsely made, forged, altered or counterfeited securit(y)," and that defendant knew it to be such. 28 U.S.C. § 2314, paragraph 3. I find that the above evidence is sufficient to support the finding, which I make, that defendant knew that the endorsement which purported to be that of the manager of Don Roth Restaurants, Inc. was a forgery. The only element of § 2314 paragraph 3 which remains to be decided is whether or not this forgery is sufficient to render the check a "falsely made, forged, altered, or counterfeited securit(y)."

The word "securities" as used in § 2314 is defined in 18 U.S.C. § 2311 as including "any...check..." Defendant correctly alleges in his motion for acquittal that the government relies entirely on its belief that the forged endorsement renders the otherwise valid American Express check a "falsely made, forged, altered, or counterfeited securit(y)." Defendant claims, however, that a forged endorsement does not make an otherwise valid check a "falsely made, forged, altered, or counterfeited securit(y)" under paragraph 3 of § 2314.

Although their interpretation is clearly not compelled by plain meaning of the words of this statute, four Circuit Courts of Appeal have agreed with defendant on this point. See, **United States v. Sciortino,** 601 F.2d 680, 682-83 (2d Cir. 1979) (forged endorsement on back side of a check); **United States v. Simpson,** 577 F.2d 78, 80-81 (9th Cir. 1978) (forged endorsement on completed stock securities); **Paulding v. United States,** 379 F.2d 170, 172 (10th Cir. 1974) (forged endorsement on back side of a check); **and Street v. United States,** 331 F.3d 151, 152-56 (8th Cir. 1964).

All four of these decisions flow from the opinion of the Court of Appeals for the Eighth Circuit in **Street v. United States, supra,** which held that a forged countersignature on an otherwise valid traveler's check did not render the check a false security within the meaning of paragraph 3. In arriving at its decision, the Eighth Circuit relied in part on the 1931 Supreme Court case of **Prussian v. United States,** 282 U.S. 675 (1931). 331 F.2d at 153-54. In **Prussian,** the Supreme Court construed 18 U.S.C. § 148, which subsequently was recodified without substantive change as 18 U.S.C. § 471. This statute forbids the false making, forging, counterfeiting or altering of any obligation or other security of the United States. The defendant in **Prussian** had forged an endorsement on the back of a U.S. Treasury draft and was charged with violating § 148 and another criminal

statute. The Supreme Court held that although the Treasury draft was an "obligation...of the United States" under the statute, the forging of an endorsement on the back of the draft by the defendant did not constitute a "false making, forging, counterfeiting or altering, of any obligation...of the United States."

The Court of Appeals for the Eighth Circuit in **Street** adopted the **Prussian** holding and applied it to paragraph 3 of 18 U.S.C. § 2314 without noting that the Supreme Court in **Prussian** based its holding on the fact that the established purpose of 18 U.S.C. § 148 (not § 471) is "the protection of bonds or securities of the United States, and not the punishment of any fraud or wrong on individuals." 282 U.S. at 678. This was a reasonable interpretation of § 148, for a forged endorsement on an otherwise valid United States security does not affect the obligation of the United States created by the security. On the other hand, § 2314, which was promulgated by Congress through its power to regulate interstate and foreign commerce, clearly contemplates the punishment of fraud which had been worked upon individuals. Thus the **Prussian** analysis contributes little to the inquiry of whether a forged endorsement renders false an otherwise valid security under paragraph 3 of § 2314, and the reliance that has been placed on the decision by the Eighth Circuit and other courts is misplaced. **Accord: United States v. DiPietto,** 396 F.2d 283, 286 (7th Cir. 1968).

The Court in **Street** also relied on the legislative history of paragraph 3 of § 2314 in ruling that a forged endorsement does not render invalid an otherwise valid security. As originally enacted as part of the National Stolen Property Act of 1934, § 2314 applied only to the interstate transportation of, **inter alia,** stolen securities worth $5,000 or more. Paragraphs 2 and 3 were added to § 2314 in 1939 to expand the scope of the statute to cover the interstate transportation of embezzled funds and "falsely made, forged, altered, or counterfeited securities." The Court of Appeals for the Eighth Circuit noted in **Street** that in a letter to the Senate Committee on the Judiciary, the United States Attorney General stated his belief that the $5,000 limitation included in paragraph 1 of § 2314 should not be written into paragraph 3. This omission, he stated, would allow the prosecution under paragraph 3 of large-scale counterfeiters of small denomination securities, who would probably be engaged in the manufacture of false securities of purported aggregate values in excess of $5,000 to offset the significant risks of engaging in such illegal activity. See, S.Rept. No. 674, 75th Cong. 1st Sess. (1939), **quoted in Street v. United States,** 331 F.2d at 154-55.

The Court in **Street** relied on this letter, which the Senate Committee on the Judiciary incorporated into the legislative history of § 2314 paragraph 3, to find "an intention" on the part of Congress "to extend the coverage of § 2314 in order to prohibit the actual false making or reproducing of securities." 331 F.2d at 155. Nothin in the Attorney General's letter, however, shows that proposed paragraph 3 was to be applied solely to counterfeiters or those who manufactured false securities on a large scale. In fact, paragraph 3 has been held to apply in situations other than those involving the large-scale counterfeiting of securities. The Supreme Court itself has held that in light of the absence of a $5,000 limitation in paragraph 3, "no distinction" can be made "between large and small operators," and the fraudulent completion of the face of a check to give it the appearance of negotiability — regardless of the amount of the check — is within the prohibition of paragraph 3. **United States v. Sheridan, supra,** 329 U.S. at 390. Assuming that this decision accurately reflects the intention of Congress in promulgating § 2314 paragraph 3, it is difficult to understand why Congress would have intended that forgers of subsequent endorsements of otherwise valid securities be treated differently under § 2314 than the forgers of original

endorsements whose actions give previously incomplete securities the appearance of validity.

Despite the questionable reasoning of the Court of Appeals for the Eighth Circuit in **Street** in relying on the legislative history of a clear and unambiguous statute, three other Courts of Appeal, as indicated above, have accepted the general proposition of **Street** that a forged endorsement does not render invalid an otherwise valid security for the purposes of § 2314 paragraph 3. For instance, in **United States v. Simpson, supra,** 577 F. 2d at 81, the Court of Appeals for the Ninth Circuit uncritically emulated the Eighth Circuit's reliance on **Prussian.** That Court, however, articulated an argument in support of the result reached in **Street** which had not previously been made. The Court recounted that in 1968, Congress added to § 2314 a new subsection — paragraph 4 — which makes illegal the transportation in interstate or foreign commerce with unlawful or fraudulent intent of any traveler's check bearing a forged countersignature. As provided in 18 U.S.C. § 2311, a "traveler's check" is a "securit(y)" for the purpose of § 2314 paragraph 3. According to a report of the House Committee on the Judiciary, paragraph 4 was added to § 2314 by Congress as a result of the lobbying efforts of the traveler's check industry, which had experienced very significant increases in the number of reported "losses" of traveler's checks since the announcement of the **Street** decision four years earlier. H.R. Rep. No. 1728, 90th Cong., 2d Sess., reprinted in (1968) **U.S. Cong. & Admin.** News, pp. 3654-55. After considering this legislative history, the Ninth Circuit in **Simpson** stated that at the time that paragraph 4 was added to § 2314, "Congress easily could have rejected the general principle upon which **Street** rests; but, apparently responding to concerns expressed by the traveler's check industry...it chose to afford relief only for traveler's checks." 577 F.2d at 81. Even discounting the above-mentioned legislative history, the Court

reasoned that the selective amendment of § 2314 to provide for traveler's checks which bear forged countersignatures underscores Congress' decision not to overrule the **Street** decision beyond the language of paragraph 4. **Id. Accord: United States v. Sciortino, supra,** 601 F.2d at 682.

There are at least two persuasive objections to the Ninth Circuit's novel argument. First, it is axiomatic that when interpreting a statute, a reviewing court should not look to the legislative history of the statute unless it is compelled to do so because of some ambiguity in the language of the statute. By its plain language, paragraph 3 of 18 U.S.C. § 2314 applies to "any falsely made, forged, **altered,** or counterfeited securities" (emphasis added). The check in this case clearly is an "altered...securit(y)" under § 2314 because the signature which purports to be that of the manager of Don Roth's Restaurant, Inc. and which was applied to the back of the check converts the check from order paper to bearer paper. This is a material alteration under the common law and under the Uniform Commercial Code. Thus, there is absolutely no need in this case to look to the legislative history of 18 U.S.C. § 2314.

Second, the addition by Congress of paragraph 4 to § 2314 after the Eighth Circuit's decision in **Street** is not, as the Ninth Circuit concludes, necessarily an admission on the part of Congress that the Eighth Circuit's interpretation of paragraph 3 — which, I note again, is contrary to the plain meaning of the words of that paragraph — the correct interpretation. Congress is not required to amend a piece of legislation or acquiesce to a judicial interpretation each time that legislation is interpreted on the Circuit Court of Appeals level. The better inference to be drawn is that because Congress has not amended paragraph 3 since the **Street** decision was handed down, paragraph 3 still means what its plain words say it means.

I am convinced that the evidence produced by the government proves that defendant was engaged in a scheme to defraud the payee of the check in question. I therefore rule that the forged endorsement on the reverse of the American Express check in this case rendered that check an "altered securit(y)" for the purposes of § 2314 paragraph 3. Therefore, the defendant's motion for acquittal should be denied and a judgment of guilty should be entered against him.

Order accordingly.

**Andrew A. Caffrey, Ch. J.**

## ORDER

**Caffrey, Ch. J.** In accordance with memorandum filed this date, it is ORDERED:

1. Defendant Omar Harkkon a/k/a Frederick J. Tyson's motion for acquittal is denied.

2. I find defendant guilty as charged.

3. Disposition will take place March 17, 1982 at 10:00 a.m.

**Andrew A. Caffrey, Ch. J.**

## ORDER
### February 18, 1982

**CAFFREY, Ch. J.**

In accordance with memorandum filed this date, it is ORDERED:

1. Defendant Omar Harkkon a/k/a Frederick J. Tyson's motion for acquittal is denied.

2. I find defendant guilty as charged.

3. Disposition will take place March 17, 1982 at 10:00 a.m.

**Andrew A. Caffrey, Ch. J.**