UNITED STATES of America, Appellee,

v.

**Frederick J. TYSON, a/k/a Omar Harkkon, Defendant, Appellant.**

No. 82–1262.

United States Court of Appeals, First Circuit.

Submitted Sept. 17, 1982.

Decided Sept. 29, 1982.

Wendie I. Gershengorn, Asst. Federal Public Defender, Boston, Mass., on brief for defendant, appellant.

William F. Weld, U. S. Atty., and Charles T. Spurlock, Asst. U. S. Atty., Boston, Mass., on brief for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BREYER, Circuit Judges.

COFFIN, Chief Judge.

Defendant was convicted under 18 U.S.C. § 2314 ("Transportation of stolen goods, securities . . ."). This appeal presents a single question of statutory interpretation: did Congress intend in paragraph three of that section to encompass by the phrase "falsely made, forged, altered, or counterfeited securities" a valid check with a forged countersignature? Though a question of first impression in this circuit, the Second, Eighth, Ninth and Tenth Circuits

have held that Congress did not so intend.[1] We agree with the analysis of those courts and reverse appellant's conviction.

There is no dispute between the parties over the facts that led to appellant's indictment. Using the name Frederick Tyson[2] and supplying false account information, appellant opened a bank account with a cash deposit of twenty-five dollars. Later the same day, an unidentified person deposited into appellant's account an American Express check made out for the sum of $11,709.75 payable to Don Roth's Restaurant, Inc. The check bore two endorsements: one which purported to be that of Michael Roth, manager of Don Roth's Restaurant, but which was a forgery and one which purported to be that of appellant. The check traveled in interstate commerce from Boston to New York where it was paid. When appellant returned to the bank two months later, the bank informed him that his account had been closed[3] and presented him with two checks—one in the amount of his initial deposit and one in the amount of the American Express check.

Appellant was charged in a one count indictment with causing the interstate transportation of a falsely made, forged, altered or counterfeited security in violation of 18 U.S.C. §§ 2314 and 2.[4] At the conclusion of the government's case in a jury-waived trial, appellant moved for acquittal contending that, as a matter of law, the forging of an endorsement on an otherwise valid security does not render the security falsely made, forged, altered, or counterfeited for purposes of § 2314. After taking the motion under advisement, the district court denied defendant's motion, found him guilty, and subsequently ordered him committed to the custody of the Attorney General for a period of two years. That sentence was stayed pending this appeal.

Section 2314 provides in relevant part (paragraph 3):[5]

"Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud; or

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transports or causes to be transported, or induces any person to travel in, or to be transported in interstate commerce in the execution or concealment of a scheme or artifice to defraud that person of money or property having a value of $5,000 or more; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any traveler's check bearing a forged countersignature; or

Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any tool, implement, or thing used or fitted to be used in falsely making, forging, altering, or counterfeiting any security or tax stamps, or any part thereof—

Shall be fined not more than $10,000 or imprisoned not more than ten years or both.

---

1. *United States v. Sciortino,* 601 F.2d 680 (2d Cir. 1979); *United States v. Simpson,* 577 F.2d 78 (9th Cir. 1978); *Pauldino v. United States,* 379 F.2d 170 (10th Cir. 1974); *Streett v. United States,* 331 F.2d 151 (8th Cir. 1964).

2. Appellant is also known as Omar Harkkon.

3. The bank closed appellant's account the day after he opened it because of a negative report on appellant from the National Check Protection Service. Attempts to notify appellant by mail were unsuccessful.

4. The indictment charged that appellant "did with unlawful intent cause to be transported in interstate commerce ... falsely made, forged, altered and counterfeited securities ... having a value of more than five thousand ($5,000.00) dollars, knowing same to have been falsely made, forged, altered, and counterfeited; all in violation of Title 18, United States Code, Sections 2314 and 2." Though the indictment included the allegation that the transported security had a value of more than $5,000 as necessary under paragraphs one and two of § 2314 but not under paragraph three, it clearly asserted a violation under paragraph three of § 2314 and not under any other paragraph of that section. Compare the language of the indictment with the language of paragraph three, *infra* at 3.
   18 U.S.C. § 2 proscribes aiding and abetting the commission of an offense.

5. Section 2314 provides in full:

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered or counterfeited; ...

Shall be fined not more than $10,000, or imprisoned not more than ten years, or both."

Emphasizing the word *altered,* the district court found that the "plain language" of paragraph three applies unambiguously to a forged countersignature on a check. Because the forged endorsement "convert[ed] the check from order paper to bearer paper"—"a material alteration under the common law and under the Uniform Commercial Code"—the court reasoned, "[t]he check in this case clearly is an 'altered ... securit[y].' " It was unpersuaded by precedent to the contrary in other circuits.

The district court first found that the seminal decision in this line, *Streett v. United States,* 331 F.2d 151 (8th Cir. 1964), had relied inappropriately on *Prussian v. United States,* 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931). In *Prussian* the Supreme Court, construing language very similar to that in § 2314, held that 18 U.S.C. § 148 (now § 471)[6] did not include the forging of an endorsement. The court in *Streett* found *Prussian* relevant precedent despite the fact that the statute interpreted in *Prussian* concerned only government securities.

"The government objects to the relevance of these cases [*Prussian* and those following it] in that they all are concerned with the protection of the United States' securities. Nevertheless, the objective being sought here is to discover the scope of § 2314, and authoritative court interpretations of a statute bearing strikingly similar language would appear to be pertinent here." 331 F.2d at 154.

The district court disagreed, however, arguing that Congress' purpose to protect the "bonds and securities [sic] of the United States" rather than to punish "any fraud or wrong on individuals" (quoting *Prussian,* 282 U.S. at 678, 51 S.Ct. at 224) made the section interpreted by *Prussian* inapposite to § 2314.[7]

The court below was also unpersuaded by the fact that the legislative history of paragraph three (added to the National Stolen Property Act of 1934 by amendment in 1939) emphasized the actual false making or reproducing of securities (*see Streett, supra,* at 154; *United States v. Sciortino,* 601 F.2d 680, 682 (2d Cir. 1979)).[8] Pointing to *Unit-*

This section shall not apply to any falsely made, forged, altered, counterfeited or spurious representation of an obligation or other security of the United States, or of an obligation, bond, certificate, security, treasury note, bill, promise to pay or bank note issued by any foreign government or by a bank or corporation of any foreign country."

6. Section 471 provides:
"Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States shall be fined not more than $5,000 or imprisoned not more than fifteen years, or both."

7. The district court further reasoned:
"The Court of Appeals for the Eighth Circuit in *Street* [sic] adopted the *Prussian* holding and applied it to paragraph 3 of 18 U.S.C. § 2314 without noting that the Supreme Court in *Prussian* based its holding on the fact that the established purpose of 18 U.S.C. § 148 (now § 471) is 'the protection of bonds or securities [sic—*Prussian* says 'currency' rather than 'securities'] of the United States, and not the punishment of any fraud or

wrong on individuals.' 282 U.S. at 678. This was a reasonable interpretation of § 148, for a forged endorsement on an otherwise valid United States security does not affect the obligation of the United States created by the security. On the other hand, § 2314, which was promulgated by Congress through its power to regulate interstate and foreign commerce, clearly contemplates the punishment of fraud which has been worked upon individuals. Thus the *Prussian* analysis contributes little to the inquiry of whether a forged endorsement renders false an otherwise valid security under paragraph 3 of § 2314, and the reliance that has been placed on the decision by the Eighth Circuit and other courts is misplaced. *Accord: United States v. Di Pietto,* 396 F.2d 283, 286 (7th Cir. 1968)." District court opinion, at 6–7.

8. The legislative history of paragraph three, S.Rep.No.274, 76th Cong., 1st Sess. (1939) (letter from the Attorney General), reads in relevant part:
"The principal purposes of the pending bill are to extend the existing law to property

*ed States v. Sheridan,* 329 U.S. 379, 67 S.Ct. 332, 91 L.Ed. 359 (1946), in which the Supreme Court held paragraph three applicable to the forging of two checks, the court reasoned that Congress did not intend to reach only large scale counterfeiting and that there is thus no basis for distinguishing a forged "subsequent endorsement" from a forged "original endorsement".[9]

Finally, the district court rejected the reasoning of *United States v. Simpson,* 577 F.2d 78, 81 (9th Cir. 1978) (*accord, United States v. Sciortino, supra,* at 682) that the 1968 amendment to § 2314 making illegal the interstate transportation of traveler's checks with forged countersignatures [10] is evidence for the proposition that forged countersignatures on other securities are not covered by the general language of paragraph three. "The better inference to be drawn", the court concluded, "is that because Congress has not amended paragraph three since the *Street* [sic] decision was handed down, paragraph three still means what its plain words say it means."

We are not sure that the Court's interpretation in *Prussian* of language parallel to § 2314 is so distinguishable as to bear no weight. The Court did not, as the district court suggests, rely principally on the purpose of the Act it construed but rather on its language. See *Prussian v. United States, supra,* 282 U.S. at 677–78, 51 S.Ct. at 224–225 (interpretation including endorsement "would be possible only by a strained construction of the language"—"if the point were doubtful, the doubt would be resolved by a consideration of the purpose and history of the Act"). If it were clear, as the district court concluded, that to transform a security through endorsement from order paper to bearer paper is to "alter" the security, the Court in *Prussian* would not have had to reach the conclusion it did. Nor are we impressed by the government's argument that the narrow definition of "government security" in § 147 (now § 8) and the broad definition of "security" in § 2311 make *Prussian* inapposite.[11] The Court's holding was not so narrow.

that has been embezzled, and also to forged or counterfeited securities.

"Studies of the desirability of extending this legislation to the transportation of forged or counterfeited securities in interstate or foreign commerce have led the Department to the conclusion that in respect to such cases the minimum amount of $5,000 serves no purpose, and that accordingly, it would be best to provide that such transportation be a criminal offense irrespective of the value of the forged, or counterfeited certificates. The reasons leading to this conclusion are that criminals who engage in forging or counterfeiting certificates do not ordinarily subject themselves to the hazards involved in such a nefarious undertaking, except for the purpose of multiplying the forged certificates on a large scale. For example, while a single act of transportation may perhaps involve a forged traveler's check of a small denomination or a forged stock certificate for a few shares, the probability is that the person who manufactured the plate from which the traveler's check or certificate was printed produced a large number of duplicates of the same fraudulent document. Otherwise, it would not have been worth while for him to go to the trouble and expense of purchasing the necessary tools and engraving the plate employed in accomplishing his criminal purpose. It would appear therefore, that the transportation of this type of contraband ar-

ticles is entirely different from the transportation of stolen property."

9. The district court opinion reads:

"Assuming that this decision [*Sheridan*] accurately reflects the intention of Congress in promulgating § 2314 paragraph 3, it is difficult to understand why Congress would have intended that forgers of subsequent endorsements of otherwise valid securities be treated differently under § 2314 than the forgers of original endorsements whose actions give previously incomplete securities the appearance of validity." District court opinion, at 8.

10. Paragraph four of § 2314 provides:

"Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce, any traveler's check bearing a forged countersignature; . . . ."

11. Admittedly, there is a significant difference in scope between the two statutes. And the Court in *Prussian* did interpret § 148 in the context of definitional § 147.

"Under § 148, 'whoever, with intent to defraud, shall falsely make, forge, counterfeit, or alter any obligation or other security of the United States' is guilty of a criminal offense. Section 147 provides: 'The words "obligation or other security of the United

· "The endorsement was at most the purported obligation of the endorser, not of the United States, and a purported transfer of the title of the draft to the endorsee. In neither aspect was the endorsement itself an obligation of the United States as defined by § •147, *or such a part of the draft as to constitute the forging of the endorsement a forgery of the draft.*" 282 U.S. at 678, 51 S.Ct. at 224 (emphasis added). *See also Streett, supra,* at 154.

Nor are we sure that the legislative history of the 1939 amendment adding paragraph three has been brushed aside by *United States v. Sheridan, supra. Sheridan* itself emphasized that history.

"In amending § 3 [of the National Stolen Property Act—paragraph three of 18 U.S.C. § 2314] Congress was extending the federal law enforcement arm to reach primarily the larger dealers in forged and counterfeited securities. Not only forged checks, but forged or counterfeited bonds and coupons, as well as other forms of securities, and the instruments with which these are made were the target. The legislative history shows that the purpose was to bring operators in these false securities into substantially the same reach of federal power as applied to others dealing in stolen goods, securities and money." 329 U.S. 389, 67 S.Ct. 337 (footnotes omitted).

Though *Sheridan* held that paragraph three applies to small time as well as large scale counterfeiters, *id.* at 390, 67 S.Ct. at 337–338, nothing in *Sheridan* suggested that paragraph three applies to anything but the actual false making or reproducing of securities. It was "not questioned" in *Sheridan* "that the checks were 'securities' " or "that they were 'forged.' " *Id.* at 382, 67 S.Ct. at 334.

■ We are certain, however, that the only sensible interpretation of § 2314 after the 1968 amendment is that, except in the case of traveler's checks, a forged endorse-

States" shall be held to mean all . . . checks, or drafts for money drawn by or upon authorized officers of the United States.' It is apparent that the draft drawn on the treasurer by an authorized officer is an 'obligation . . . of the United States' both in common parlance and by the express definition of § 147. But to extend the meaning of that phrase so as to embrace the endorsement on the government draft is to enlarge the statutory definition and would be possible only by a strained construction of the language of §§ 147 and 148, inadmissible in the interpretation of criminal statutes, which must be strictly construed." 282 U.S. at 677, 51 S.Ct. at 224.

The analogue to § 147, for purposes of the National Stolen Property Act, is § 2311, which defines "securities" broadly.

" 'Securities' includes any note, stock certificate, bond, debenture, check, draft, warrant, traveler's check, letter of credit, warehouse receipt, negotiable bill of lading, evidence of indebtedness, certificate of interest, or participation in any profit-sharing agreement, collateral-trust certificate, pre-organization certificate or subscription, transferable share, investment contract, voting-trust certificate; certificate of interest in property, tangible or intangible; instrument or document or writing evidencing ownership of goods, wares, and merchandise, or transferring or assigning any right, title, or interest in or to goods, wares, and merchandise; or, in general, any instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, warrant, or right to subscribe to or purchase any of the foregoing, or any forged, counterfeited or spurious representation of any of the foregoing;"

It is arguable, therefore, that though a government security with a forged endorsement is not a falsely made, altered, or counterfeited "obligation or other *security of the United States* ", another type of security with a forged endorsement *does* constitute a forged security under · §§ 2314 and 2311. Nonetheless, we find this reasoning strained and, particularly in the light of other indications of congressional intent, are unpersuaded.

Pointing out that the conviction in *Prussian* was upheld under § 29 (now § 495), which makes a federal crime the false making, altering, forging, or counterfeiting of "any . . . other writing for the purpose of obtaining or receiving, . . . from the United States . . . any sum of money", the government also argues that the broad definition of "security" in § 2311 together with paragraph three of § 2314 creates similar catch-all criminal liability with respect to private securities. We find this reasoning similarly strained. Section 2311, though broad, does not include "any writing" to obtain money nor does it contain any language that can be easily construed to include endorsement of a check.

ment does not convert a valid security into one "falsely made, forged, altered, or counterfeited."[12] Paragraph four makes punishable the transportation in interstate commerce "with unlawful or fraudulent intent" of "any traveler's check bearing forged countersignature." Traveler's checks are explicitly included within the meaning of the term "securities" as used in paragraph three. *See* § 2311. Therefore, if a forged countersignature were included within the meaning of the phrase "forged, altered, or counterfeited" in paragraph three, paragraph four would add nothing to paragraph three.[13] We hesitate to ascribe to Congress such a meaningless effort. The district court did not attempt to explain how its interpretation of paragraph three could make paragraph four anything but redundant.

Our interpretation is supported by the legislative history. Paragraph four was added by amendment with full consideration of the prior holding in *Streett v. United States,* 331 F.2d 151 (8th Cir. 1964) that a forged countersignature does not make an otherwise valid security "falsely made, forged, altered, or counterfeited" within the meaning of § 2314.

"Section 2311 of title 18 of the United States Code includes traveler's checks under the definition of the term 'securities' as used in an existing paragraph of section 2314. However, the Department of Justice points out in a letter dated January 31, 1968, that the words 'falsely made, forged, altered, or counterfeited' have been construed to refer only to the making or execution of an instrument and not to cover a validly executed instrument bearing a forged countersignature (*Streett v. United States,* 331 F.2d 151 (C.A. 8, 1964))." H.R.Rep.No.1728, 90th Cong., 2d Sess., *reprinted in* 1968

U.S.Code Cong. & Ad.News 3654, 3654–55.

In adding paragraph four, Congress responded to contentions that forged countersignatures on traveler's checks pose an especial interstate and therefore federal problem.

"Representatives of the traveler's check industry also state that their records indicate that a great majority of traveler's checks issued are used in interstate commerce. Consequently, lost or stolen traveler's checks are most susceptible to forgeries and illegal transportation." *Id.*

Thus, though acknowledging the general scope of the holding in *Streett*—that paragraph three does "not ... cover a validly executed *instrument* bearing a forged countersignature"—Congress amended § 2314 only with respect to traveler's checks. *See United States v. Simpson, supra,* at 81.

Therefore, based on the language of § 2314 examined as a whole and as reinforced by its legislative history, we follow our sister courts and hold that the phrase "falsely made, forged, altered, or counterfeited securities" in paragraph three of § 2314 does not include a valid security with a forged endorsement. The government cites no cases that have held to the contrary. The cases upon which it relies have all involved the falsification of elements necessary to the completion of the security itself rather than to the subsequent transfer of that security. *See, e.g., United States v. Hagerty,* 561 F.2d 1197 (5th Cir. 1977) (making of draft with fictitious drawee information); *United States v. Huntley,* 535 F.2d 1400 (5th Cir. 1976) (same); *United States v. Tucker,* 473 F.2d 1290 (6th Cir. 1973) (sight draft executed with fictitious name); *United States v. Di Pietto,* 396 F.2d 283 (7th Cir. 1968) (falsified

---

12. The single case that has criticized this interpretation (in dicta), *United States v. Di Pietto,* 396 F.2d 283 (7th Cir. May 1968), did so before the passage of the 1968 amendment in September of 1968 (P.L. 90–535).

13. *Cf. United States v. Simpson, supra,* at 81:

"[T]he application of the interpretive guideline *inclusio unius est exclusio alterius* suggests the conclusion that the transportation of securities with forged endorsements, other than traveler's checks, is not within the ambit of the third paragraph."

payee information on stolen money order) (criticizing in dicta holding of *Streett*).

 Our holding does not create a loophole in the federal scheme for prosecution of crimes involving the interstate transportation of stolen or falsified securities. We have no doubt that a valid security with a forged endorsement, no matter how the security was acquired by the forger, has been "converted or taken by fraud" within the meaning of paragraph one of § 2314. *See United States v. Handler*, 142 F.2d 351 (2d Cir. 1944) (statute applicable to any taking whereby a person dishonestly obtains goods or securities belonging to another with the intent to deprive the owner of the rights and benefit of ownership); *cf.* Prosser on Torts, § 15 (conversion). Unlike the transportation of "falsely made, forged, altered, or counterfeited securities", however, Congress made the interstate transportation of such converted securities a federal crime only if their value exceeds $5,000.

The security in question here was, as a matter of agreed fact, worth more than $5,000. That appellant was charged under paragraph three and not under paragraph one appears anomalous. But that he was is clear and undisputed.[14] We are not at liberty to speculate about appellant's guilt for a crime with which he was not charged and thus had no notice to defend. We find the evidence insufficient to convict appellant as charged under paragraph three of § 2314.

*Reversed.*

---

14. *See* note 4 and accompanying text *supra.*