Filed 10/21/20

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MIGUEL GUERRERO, | |
| Plaintiff and Appellant, | E072470 |
| v. | (Super.Ct.No. MCW1800102) |
| MICHAEL HESTRIN, as District Attorney, etc., | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County. John D. Molloy, Judge. Remanded with directions.

Electronic Frontier Foundation, David A. Greene, and Naomi F. Gilens for Plaintiff and Appellant.

Reporters Committee for Freedom of the Press, Katielynn B. Townsend, Bruce D. Brown , Gabriel Rottman, and Lin Weeks as Amici Curiae for Plaintiff and Appellant.

Michael A. Hestrin, District Attorney, Emily R. Hanks and Jesse Male, Deputy District Attorneys for Defendant and Respondent.

1

In 2014, a single Riverside County Superior Court judge signed 602 orders authorizing wiretaps. To put that in perspective, all other judges in the state authorized 345 wiretaps that year. And the 602 wiretaps that year comprised approximately 17 percent of all the wiretaps authorized by all the state and federal courts in the nation.[1] The next year, that same judge and one other authorized 640 wiretaps, the rest of the state authorized 505, and the 640 wiretaps comprised roughly 15 percent of all wiretaps in the country.[2]

Appellant Miguel Guerrero was targeted by a wiretap that a Riverside County judge authorized in 2015. Guerrero, who was never arrested or charged with a crime in connection with the wiretap, wants to know why he was targeted, and he believes that the sheer number of Riverside County wiretaps in those years raises significant doubts about whether the wiretaps complied with constitutional requirements. To that end, relying on California's wiretap statutes as well as the First Amendment, he asked the trial court to

---

[1] (Office of the Attorney General, California Electronic Interceptions Report, Annual Report to the Legislature 2014, Table 3 (Number of Intercept Orders Granted) <https://oag.ca.gov/sites/all/files/agweb/pdfs/publications/annual-rpt-legislature-2014.pdf>; United States Courts, Wiretap Report 2014, Table 2 <https://www.uscourts.gov/sites/default/files/table_2_0.pdf>.) The 2014 figures (as well as the 2015 figures below) do not account for orders in the United States Foreign Intelligence Surveillance Court, which do not concern domestic criminal prosecutions.

[2] (Office of the Attorney General, California Electronic Interceptions Report, Annual Report to the Legislature 2015, Table 3 (Number of Intercept Orders Granted), <https://oag.ca.gov/sites/all/files/agweb/pdfs/publications/annual-rpt-legislature-2015.pdf>; United States Courts, Wiretap Report 2015, Table 2 <https://www.uscourts.gov/statistics-reports/wiretap-report-2015>.)

allow him to inspect the wiretap order, application, and intercepted communications. The trial court denied his request.

We hold that the trial court applied the wrong standard in considering Guerrero's application under California's wiretap statutes, which closely parallel statutes under federal law. We remand so that the trial court can properly exercise its discretion, and we provide guidance on the appropriate standard. Given our holding on the statutory issue, we decline to address the contention, advanced by Guerrero as well as an amicus brief, that the public has a First Amendment right of access to the wiretap materials.

## I. FACTUAL AND PROCEDURAL HISTORY

In 2014 and 2015, two Riverside County judges authorized over twelve hundred wiretaps that have since been the subject of public scrutiny and consternation. One federal judge has stated that "the sheer volume of wiretaps applied for and approved in Riverside County suggests that constitutional requirements cannot have been met" (*United States v. Mattingly* (W.D. Ky. 2016) 2016 U.S. Dist. LEXIS 86489, at p. *27), and journalists have reported that the wiretaps "allowed investigators . . . to intercept more than 2 million conversations involving 44,000 people" (Heath and Kelman, *Justice officials fear nation's biggest wiretap operation may not be legal*, USA Today (Nov. 11, 2015) <https://www.usatoday.com/story/news/2015/11/11/dea-wiretap-operation-riverside-california/75484076/>; see also *ibid.* [reporting that federal prosecutors "have mostly refused to use the results in federal court because they have concluded the state court's eavesdropping orders are unlikely to withstand a legal challenge"]). The law

3

distinguishes wiretaps from search warrants and other investigative techniques by precluding the routine use of wiretaps.[3]

Wiretap Order No. 15-409 targeted three phones, including Guerrero's, from June to July 2015. Guerrero describes himself as a retired California Highway Patrol officer with no criminal record. Guerrero asserts that he never received a notice informing him his calls had been intercepted, although section 629.68 requires such a notice within a reasonable time. Guerrero also states that he learned that he had been the target of a wiretap only in 2016, when family and friends who received a section 629.68 notice informed him about it. In the five years since his phone calls were intercepted, Guerrero has not been charged with any crime related to the wiretap, and the district attorney conceded in trial court that there are no pending criminal charges against him.

A separate statute allows a civil cause of action against any person who intercepts wire or electronic communications in violation of California's wiretap statutes. (§ 629.86.) Guerrero is considering bringing such a lawsuit, and he wants to "educate the public about the purported justification for Riverside's unprecedented 2015 wiretapping campaign." For these purposes, Guerrero went to court to request access to the wiretap.

---

[3] For a wiretap, a judge must find that "[n]ormal investigative procedures have been tried and have failed or reasonably appear unlikely to succeed if tried or too dangerous." (Pen. Code, § 629.52, subd. (d); undesignated statutory references are to the Penal Code.) "The requirement of necessity is designed to ensure that wiretapping is neither 'routinely employed as the initial step in criminal investigation' [citation] nor 'resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" (*People v. Leon* (2007) 40 Cal.4th 376, 385.)

In October 2018, Guerrero filed a motion in the trial court, requesting that the court "unseal[] the wiretap application and supporting affidavits in Wiretap [Order] No. 15-409 and permit[] inspection of the intercepted communications, applications, and orders pertaining to" the wiretap.[4] He contended, as he does on appeal, that he should be given access to the wiretap materials pursuant to the "interest of justice" standard for inspection of them found in section 629.68, as well as under the First Amendment. Respondent Michael Hestrin, the District Attorney for Riverside County (District Attorney), opposed, contending in part that California's wiretap statutes demonstrate a "clear statutory presumption in favor of sealing." The District Attorney also relied on a different provision of California's wiretap statutes, section 629.66, in claiming that Guerrero failed to demonstrate the "good cause" necessary to rebut the presumption that they be sealed. Thus, Guerrero presented the motion under the "interest of justice" standard found in section 629.68, but the District Attorney employed the "good cause" standard found in section 629.66.

The trial court denied the motion, in an order issued by a judge who was not the one who authorized the wiretap. The trial court applied section 629.66 and found Guerrero had not shown good cause for disclosure:

"And when I look at good cause, good cause—the most plain, basic meaning of that has to mean that there's something different than normal. Because good cause—

---

[4] At the hearing, Guerrero called the motion a "preliminary discovery motion prior to being able to file a complaint."

5

something different than routine . . . . Otherwise, why put the words good cause. It has to mean something other than routine.

"And this affidavit—I understand that you're concerned about the great number in Riverside County, but there has never been any finding, that I am aware of, that something nefarious was happening. So all you're asking me to do is consider the statistics. This is nothing more than routine.

"Every person who—against whom charges are not filed would be similarly situated with Mr. Guerrero, which would mean that's not good cause. I mean, that's nothing new. That's nothing unique. I do not find good cause. I find that the affidavit lacks good cause."

## II. ANALYSIS

The trial court erred when it construed section 629.68 as requiring Guerrero to demonstrate good cause here. To show why, we consider first the text of section 629.68, which does not expressly require good cause to access wiretap materials, then the text of section 629.66, an adjacent section that *does* expressly require good cause. We then explain why it is error to import section 629.66's good cause requirement into section 629.68. After concluding that remand is required, we outline various factors for the trial court to consider when applying the correct standard.

6

*A. Sections 629.68 and 629.66*

In full, section 629.68 states:

"Within a reasonable time, but no later than 90 days, after the termination of the period of an order or extensions thereof, or after the filing of an application for an order of approval under Section 629.56 which has been denied, the issuing judge shall issue an order that shall require the requesting agency to serve upon persons named in the order or the application, and other known parties to intercepted communications, an inventory which shall include notice of all of the following:

"(a) The fact of the entry of the order.

"(b) The date of the entry and the period of authorized interception.

"(c) The fact that during the period wire or electronic communications were or were not intercepted.

"The judge, upon filing of a motion, may, in his or her discretion, make available to the person or his or her counsel for inspection the portions of the intercepted communications, applications, and orders that the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge, the serving of the inventory required by this section may be postponed. The period of postponement shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was granted."

Four sentences make up section 629.68. The first sentence requires that an inventory notice be served, soon after the wiretap ends, on "persons named in the

7

[wiretap] order or the application" and "other known parties to intercepted communications." The second sentence states that "the person"—that is, any person who must be served with an inventory notice pursuant to the first sentence—may file a motion to inspect "the portions of the intercepted communications, applications, and orders" that the judge, "in his or her discretion," "determines to be in the interest of justice." The third sentence states that service of an inventory notice may be postponed upon an "ex parte showing of good cause." (Note that this third sentence, which requires "good cause" for postponing notice, does not pertain to the motion described in the second sentence and at issue in this appeal.) The fourth sentence limits this postponement to "no longer than [what] the authorizing judge deems necessary to achieve the purposes for which [postponement] was granted."

Section 629.66, which immediately precedes section 629.68 and also addresses wiretap materials, reads as follows:

"Applications made and orders granted pursuant to this chapter [i.e., the wiretap statutes] shall be sealed by the judge. Custody of the applications and orders shall be where the judge orders. The applications and orders shall be disclosed only upon a showing of good cause before a judge or for compliance with the provisions of subdivisions (b) and (c) of Section 629.70 and shall not be destroyed except on order of the issuing or denying judge, and in any event shall be kept for 10 years."

The third sentence of section 629.66, like the second sentence of section 629.68, describes under what circumstances certain wiretap materials (here, only "applications

8

and orders") may be accessed.  But unlike section 629.68, section 629.66 expressly requires "good cause."  (Section 629.70, which concerns disclosure to criminal defendants, does not apply, as Guerrero was never charged with a crime.)  Thus the issue arises:  did Guerrero have to demonstrate "good cause," as section 629.66 requires, or that disclosure would be in the "interest of justice," as section 629.68 requires?

We conclude that Guerrero needed to demonstrate only that disclosure would be in the interest of justice.  The disclosure procedure described in section 629.68 applies only to those entitled to receive an inventory notice, a narrower category than those who may seek disclosure under section 629.66, an adjacent provision that is available to anyone (including, for example, members of the media) who can demonstrate good cause.  Because "more specific provisions take precedence over more general ones" (*Collection Bureau of San Jose v. Rumsey* (2000) 24 Cal.4th 301, 310), section 629.68 controls over section 629.66 when both nominally apply.  (See also *HCSC-Laundry v. United States* (1981) 450 U.S. 1, 6 ["a specific statute . . . controls over a general provision . . . particularly when the two are interrelated and closely positioned"].)[5]  Here, Guerrero was entitled to an inventory notice, so section 629.68 applies.

In the abstract, saying that one must meet an "interest of justice" standard rather than one for "good cause" is not clarifying, as both standards are broad and difficult to define.  (See, e.g., *In re Lucas* (2012) 53 Cal.4th 849 ["It has long been recognized that

---

[5]  Sections 629.68 and 629.66 were enacted at the same time, so the rule that "later enactments supersede earlier ones" (*Collection Bureau of San Jose v. Rumsey*, *supra*, 24 Cal.4th at p. 310) does not apply.  (See Sen. Bill No. 1016 (1995-1996 Reg. Sess.).)

9

'[t]he term "good cause" is not susceptible of precise definition.'"]; *Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 651 ["An interests of justice standard is incompatible with the necessity for a clear standard as to precisely which pretrial orders are appealable."].)  But here a marked difference in substance may be inferred from context.  The wiretap statutes emphasize the protection of privacy of those targeted or recorded, but there is a reduced need for such protection when the person seeking access to wiretap materials is the target of the wiretap.  This leads us to conclude that the "interest of justice" standard under section 629.68 is intended to describe a lighter burden than the "good cause" standard under section 629.66.

Because "[t]he Legislature enacted [the wiretap statutes] in order 'to expand California wiretap law to conform to the federal law'" (*People v. Zepeda* (2001) 87 Cal.App.4th 1183, 1196), we may seek guidance from the federal wiretap law, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (Title III; 18 U.S.C. § 2510 et seq.).  (See *People v. Leon*, *supra*, 40 Cal.4th at p. 384; *People v. Acevedo* (2012) 209 Cal.App.4th 1040, 1051.)

In passing Title III in 1968, Congress was driven by two competing interests.  The first was the need to combat organized crime:  as a senate report noted, "[t]he major purpose of [T]itle III is to combat organized crime."  (Sen. Rep. No. 90-1097, 90th Cong., 2d Sess. (1968), reprinted in 1968 U.S. Code Cong. & Admin. News, p. 2157 (Senate Report).)  Congress found that "[o]rganized criminals make extensive use of wire and oral communications in their criminal activities," and that "[t]he interception of such

10

communications to obtain evidence of the commission of crimes or to prevent their commission is an indispensable aid to law enforcement and the administration of justice." (Pub.L. No. 90-351, § 801(c) (June 19, 1968) 82 Stat. 197, 211.)

The second was the need to protect personal privacy. The Senate Report noted that "tremendous scientific and technological developments that have taken place in the last century have made possible today the widespread use and abuse of electronic surveillance techniques." (Senate Report, *supra*, at p. 2154.) As a result, "privacy of communication" had become "seriously jeopardized," and "[n]ew protections for privacy" were necessary. (*Id.* at pp. 2154, 2156.)[6]

Title III thus has "as its dual purpose (1) protecting the privacy of wire and oral communications, and (2) delineating on a uniform basis the circumstances and conditions under which the interception of wire and oral communications may be authorized." (Senate Report, *supra*, at p. 2153.) It "prohibits all wiretapping and electronic surveillance by persons other than duly authorized law enforcement officials engaged in the investigation of specified types of major crimes after obtaining a court order," with exceptions not implicated here. (*Id.* at p. 2113; see also *Gelbard v. United States* (1972) 408 U.S. 41, 46 ["Title III authorizes the interception of private wire and oral communications, but only when law enforcement officials are investigating specified

---

[6] The Senate Report also noted that wiretapping proponents and critics both "agree[d]" that current law had been "extremely unsatisfactory." (Senate Report, *supra*, at p. 2154.)

11

serious crimes and receive prior judicial approval, an approval that may not be given except upon compliance with stringent conditions"].)

As enforcement mechanisms, Title III provides criminal penalties of fines and up to five years of imprisonment (25 U.S.C. § 2511(4)), a civil cause of action (*id.* at § 2520), and a statutory exclusionary rule prohibiting the contents of any wiretap or evidence derived therefrom from being used as evidence if the disclosure would violate Title III (*id.* at § 2515). (See also Senate Report, *supra*, at p. 2156 ["Criminal penalties have their part to play. But other remedies must be afforded the victim of an unlawful invasion of privacy. Provision must be made for civil recourse for dangers. The perpetrator must be denied the fruits of his unlawful actions in civil and criminal proceedings"].) California's wiretap statutes similarly provide for potential jail time (§ 629.84), a civil cause of action (§ 629.86), and a statutory exclusionary rule (§ 629.72). As to the disclosure of wiretap materials, our state's wiretap statutes almost entirely conform to Title III. (Compare §§ 629.86, 629.88 with 25 U.S.C. § 2518(8)(b), (d).)

Given the extent to which Congress and the Legislature sought to protect "the privacy of wire and oral communications" (Senate Report, *supra*, at p. 2153), it is not surprising that Title III and California's wiretap statutes limit when a member of the general public may access wiretap materials. The statutes do so by requiring a movant to demonstrate "good cause." Thus, the federal Second Circuit has held that a newspaper lacked good cause to obtain the wiretap applications surrounding the government's

12

investigation into a former governor.  (*In re New York Times Co. to Unseal Wiretap* (2d Cir. 2009) 577 F.3d 401 (*New York Times*).)  That same court has held that a television network lacked good cause to access wiretap materials surrounding an investigation it had reported on.  (*Natl. Broadcasting Co. v. U.S. Dept. of Justice* (2d Cir. 1984) 735 F.2d 51 (*NBC*).)  In both these cases, the court relied on the federal analog of section 629.66—which, like section 629.66, is not limited to those receiving an inventory notice—and in both cases, the party seeking access was not someone whose calls had been intercepted as part of the wiretap.  (See *New York Times*, *supra*, at p. 405 [interpreting 25 U.S.C. § 2518(8)(b)]; *NBC*, *supra*, at p. 55 [same].)  In *New York Times*, the court, relying on *NBC*, noted that there was a "strong presumption" against disclosure under the procedure available to the general public.  (*New York Times*, at p. 406.)  A statutory presumption against disclosure makes sense under such circumstances because private information should not lightly be disclosed publicly.

Legislative concerns over privacy also explain why, as to the intercepted conversations themselves, a member of the general public has no statutory right of access at all, under either California or federal law.  Section 629.66 provides that even when good cause is satisfied, a movant is entitled to only "applications and orders."  Section 629.68, on the other hand, allows the target of the wiretap to access "*portions of the intercepted communications*, applications, and orders" (italics added) if doing so is in the interest of justice.  Title III's provisions are identical with regard to what materials may be available to a member of the general public or the target of a wiretap, respectively.

13

(See 25 U.S.C. § 2518(8)(b), (d).) Thus, both California's wiretap statutes and Title III protect individual privacy by requiring a member of the general public to show "good cause" before being able to access any wiretap materials, and even if good cause is shown, that member of the general public is not given access to the intercepted communications themselves.

There is significantly less need to safeguard a person's privacy when the person seeking wiretap materials was the target of that wiretap. The target, in seeking to inspect the wiretap materials, obviously consents to the disclosure being made (to himself or herself), and the inspection does not necessarily disclose private information to a third party. The intercepted conversations typically involve the target as a participant. It is possible that the application and orders could contain private information about others (such as, for example, information obtained from another wiretap needed to show necessity for the target's wiretap). But this is neither invariably the case nor is it likely that other individuals' private information would pervade a target's wiretap documents. Consequently, the privacy concerns underlying Title III and the California wiretap statutes are diminished when the person seeking access is one whose conversations were being recorded.

We therefore hold that while there is a presumption against disclosure when a member of the general public seeks wiretap applications and orders pursuant to section 629.66, no such presumption applies when someone entitled to an inventory notice seeks wiretap materials pursuant to section 629.68. (See *S.E.C. v. Rajaratnam* (2d Cir. 2010)

14

622 F.3d 159, 173 [holding, in Title III case, that "[s]ince Congress has specifically laid out different requirements for the disclosure of wiretap applications and orders than for the disclosure of wiretapped communications, we decline to read the requirements for the former to apply to the latter"].) "Good cause" in the context of section 629.66 requires a sufficient reason to disclose nonpublic information to a third party. (See *In re Applications of Kansas City Star* (8th Cir. 1981) 666 F.2d 1168, 1176 ["Good cause to us means that, at least minimally, there must be a need for disclosure."].) "Interests of justice" in the context of section 629.68, on the other hand, requires a consideration of the particular relevant competing interests advanced in the case, but is not premised on the same, important concern regarding the privacy of a wiretap target.

The District Attorney contends that "it is clear that a superior court judge must first find good cause to unseal the wiretap application and order before the court can consider a motion to inspect under section 629.68." Thus, in his view, a "good cause" determination under section 629.66 must precede an "interests of justice" determination under section 629.68. He contends this is so for two reasons. The first is that section 629.66 states that wiretap order and applications "shall be sealed." The second is that section 629.66, which was amended in 2010 to carve out certain exceptions from the good cause requirement, shows that the Legislature did not intend for section 629.68 to provide a similar carveout.

Neither of these reasons is convincing. The fact that wiretap materials "shall be sealed" in and of itself has no bearing on what standard one must satisfy to access them;

15

it simply means that the materials do not start out as publicly available documents.[7]

Moreover, the Legislature's choice to carve out compliance with some provisions from the good cause requirement in section 629.66 does not necessarily imply anything about section 629.68. This is especially true here because, as we have discussed, section 629.68 provides a procedure for accessing wiretap materials, available only to those whose communications were intercepted, that is different and separate from the section 629.66 procedure available to the general public. Section 629.68 "take[s] precedence" when it applies (*Collection Bureau of San Jose v. Rumsey*, *supra*, 24 Cal.4th at p. 310), and, in that sense, always has been carved out from the good cause requirement in section 629.66.

Additionally, under the District Attorney's interpretation, the motion to inspect made available by section 629.68 would be superfluous, at least as to wiretap orders and applications. If good cause is shown under section 629.66, then the statute states that the applications and orders "shall" be disclosed, without exception, and "'[t]he word "shall," when used in a statute, is ordinarily construed as mandatory . . . .'" (*Severson & Werson, P.C. v. Sepehry-Fard* (2019) 37 Cal.App.5th 938, 946.) As a court *must* disclose upon a

---

[7] This stands in contrast to the common law rule that court records are presumptively open. (See *Satele v. Superior Court* (2019) 7 Cal.5th 852, 860 ["Both this court and the United States Supreme Court have recognized a 'general right' under the common law 'to inspect and copy public records and documents, including judicial records and documents.'"]; cf. Cal. Rules of Court, rule 2.550(c) ["Unless confidentiality is required by law, court records are presumed to be open."]; *United States v. Business of Custer Battlefield Museum and Store Located at Interstate 90, Exit 514, South of Billings, Mont.* (9th Cir. 2011) 658 F.3d 1188, 1192 [holding that "the common law right of access applies to warrant materials after 'an investigation has been terminated'"].)

16

finding of good cause, there would be nothing gained in also considering whether inspection would be in the interest of justice. "[C]ourts must strive to give meaning to every word in a statute and to avoid constructions that render words, phrases, or clauses superfluous." (*Klein v. United States of America* (2010) 50 Cal.4th 68, 80.) Because the District Attorney's reading would render the interests of justice standard superfluous as to certain types of requests, as well as the other reasons stated above, we do not agree with his construction of sections 629.66 and 629.68. (See also *S.E.C. v. Rajaratnam*, *supra*, 622 F.3d at p. 173 ["declin[ing] to read" good cause requirement into federal counterpart of section 629.68].)

To summarize, section 629.66 does not by its terms limit who may seek disclosure of wiretap materials, but anyone applying under that section must demonstrate "good cause," which means overcoming a presumption against disclosure, and even then any disclosure is limited to wiretap applications and orders, not the intercepted conversations. Section 629.68, which applies to a narrower class of persons, takes precedence when it applies, and those seeking to inspect under section 629.68 need satisfy only a less onerous "interest of justice" standard not so premised against disclosure.

Section 629.68 states that inspection is subject to the trial court's "discretion." Here, however, the trial court rejected Guerrero's motion based on its understanding of "good cause," an inapplicable standard. The trial court appeared to apply a presumption against disclosure, requiring "something different than normal" from Guerrero, rather than balancing Guerrero's interests and the reasons counseling against disclosure in the

17

particular case. While we understand that the trial court in this situation lacked clear appellate guidance, we conclude that the trial court's decision constituted an abuse of discretion because it applied the wrong standard. (See *In re Charlisse C.* (2008) 45 Cal.4th 145, 159 ["a disposition that rests on an error of law constitutes an abuse of discretion"].)

"Because the standard we announce is new, the proper course is to remand to the trial court for application of the . . . test formulated above to the facts of this case." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 824.) Moreover, the record here indicates that Guerrero would likely have testified and been cross-examined had the judge not found that Guerrero's affidavit failed to demonstrate good cause: Guerrero was at the hearing and expressed a willingness to testify, and the District Attorney similarly expressed an intent to cross-examine Guerrero in support of its argument in the alternative. Accordingly, "'[w]e cannot foreclose the possibility that further information was available, but not presented, at the time the . . . court ruled upon the motion.'" (*In re Charlisse C.*, *supra*, 45 Cal.5th at p. 167.) "[T]he prudent course is [therefore] to remand the matter . . . rather than to decide the matter on the existing state of the evidentiary record." (*Ibid.*)

To aid the trial court, we outline some guidance for evaluating Guerrero's motion under the "interests of justice" standard in section 629.68 that we hold applicable here.

18

*B. Balancing Interests under Section 629.68*

In considering a motion to inspect wiretap materials under section 629.68, a court should balance the interests of the movant, the government, those other than the movant whose information and conservations may become disclosed to the movant, and the public. We elaborate on each in turn.[8]

### 1. The Movant's Interest

A target of a wiretap who is criminally charged often receives copies of the wiretap materials because of his interest in whether the wiretap was properly authorized, which he can raise in a motion to suppress evidence. (See §§ 629.72 [allowing suppression motion], 629.70 [generally prohibiting use of wiretaps or evidence derived therefrom in a proceeding unless wiretap application, order, and copy of all interceptions are provided to defendant at least 10 days in advance].) But an uncharged target such as Guerrero also has a potential litigative interest in the materials, in the form of the civil cause of action under section 629.86. Like a suppression motion, the civil cause of action helps vindicate privacy interests by deterring wiretaps that do not follow statutory or constitutional requirements. A section 629.86 cause of action is indeed one of the main reasons Guerrero seeks the wiretap records to begin with.[9] Congress, in passing Title III,

---

[8] The interests we describe here are not intended to be exhaustive. Different circumstances may make additional considerations relevant.

[9] Guerrero also states that he wants to "educate the public about the purported justification for Riverside's unprecedented 2015 wiretapping campaign." We equate this with the public's interest, discussed below.

specifically anticipated that the analogous federal civil cause of action would serve such a purpose. (See Senate Report, *supra*, at p. 2196 ["Injunctive relief, with its attendant discovery proceedings, is not intended to be available [citation]. It is expected that civil suits, if any, will instead grow out of the *filing of inventories* under [25 U.S.C.] section 2518(8)(d)."], italics added.) As such, placing too great a burden on access to those materials necessary to substantiate a section 629.86 action would render the action toothless for curbing unlawful government intrusion.

Here, the trial court appeared to require something more than a desire to pursue a lawsuit under section 629.86. At the hearing, for instance, the trial court stated that Guerrero's concerns were "nothing unique." Although this appears to have been tied to its erroneous view that Guerrero needed to demonstrate good cause, we believe that, under the correct standard, a movant potentially may successfully demonstrate that inspection would be in the interests of justice on a desire to pursue a section 629.86 action alone.

Furthermore, the fact that others may be in the same position as a movant should not lessen the significance of a movant's interest. At the hearing on the motion to inspect here, the trial court ruled against disclosure partially because "[e]very person . . . against whom charges are not filed would be similarly situated with" Guerrero. This reasoning does not do justice to the privacy interests of a wiretap target. Many people may want to vindicate their privacy rights. It does not follow that those rights should therefore be harder to enforce. Assuming, purely for the sake of argument, that many of the wiretaps

authorized in Riverside County in 2014 and 2015 were indeed unlawful, the government should not be able to more easily keep the records of those wiretaps sealed simply because there are so many of them.[10] The significance of a movant's interest should be independent of the possibility that similar motions to inspect may follow.[11]

### 2. *The Government's Interest*

The government, of course, often has a profound interest in maintaining the confidentiality of its investigations. The government's interest in this respect may therefore take precedence over any other competing interests when considering a motion to inspect under section 629.86. (See *United States v. Dorfman* (7th Cir. 1982) 690 F.2d

---

[10] For a similar reason, we reject the District Attorney's contention that the statutory presumption "that official duty has been regularly performed" (Evid. Code, § 664) should guide a motion to inspect under section 629.68. Congress, in enacting Title III, contemplated civil suits against government officials for wrongful wiretaps, and nothing in section 629.86 forecloses a similar lawsuit, even though section 629.86 can make such suits difficult to win. (See § 629.86 ["A good faith reliance on a court order is a complete defense to any civil or criminal action brought under this chapter . . . ."].) If the Legislature has given individuals such as Guerrero an opportunity to litigate the issue of government propriety, it makes little sense for records to be withheld solely on the presumption of that propriety.

[11] In any event, here the statute of limitations under section 629.86 may have already run for others whose calls were intercepted in 2014 and 2015, which would affect the significance of their interests if they were to similarly seek a motion to inspect. Although we are not aware of any case discussing the statute of limitations for a section 629.86 action and do not rule on the issue here, we note that (1) the statute does not state a limitations period, (2) the general "catch-all" limitations period is four years where the Code of Civil Procedure does not provide otherwise (Code Civ. Proc., § 343), and (3) if the catchall provision governs, then the limitations period may have already run for many of those whose calls were intercepted at least five years ago.

21

1230, 1234 ["the right of conversational privacy, founded on the Fourth Amendment," "yields among other things to imperative needs of law enforcement"].)

The government's interest in this regard is more pronounced when an investigation is ongoing, and in the few published cases where the recipient of an inventory notice has sought wiretap materials outside the context of a filed criminal case, courts have routinely cited an ongoing investigation as a primary reason against disclosure. (See *Stoddard v. United States* (2d Cir. 1983) 710 F.2d 21, 23 [affirming denial of motion to inspect where district court considered "both [defendant's] arguments as to the need for disclosure and the harm that such disclosure might work in the context of a continuing homicide investigation"]; *Matter of Steven* (D. Kan. 2017) 243 F.Supp.3d 1209, 1215 ["The Movants are not wrong for wanting to know more, they are just too early. If charges are ever brought, the Movants will have more access to information surrounding this investigation. Alternatively, if charges are not brought after what seems to be an unreasonable amount of time, the Movants may have a stronger argument for the disclosure in a renewed motion."]; *Application of United States Authorizing Interception of Wire Communications* (E.D. Pa. 1976) 413 F.Supp. 1321, 1325, 1335 [concluding that, "at this juncture, the interest of the Government in maintaining secrecy in the grand jury proceedings outweighs movant's interest in discovery of the requested materials," and noting that "it is principally a question of *timing*" in light of availability of civil cause of action]; *In re Persico* (E.D.N.Y. 1973) 362 F.Supp. 713, 714 [holding that movants'

application for inspection was "premature" because "disclosure at this time could jeopardize the continuing investigation"].)

The existence and weight of the government's interest, however, should not be presumed, but affirmatively articulated and substantiated. Here, we observe that the District Attorney has not relied on the existence of an ongoing investigation or grand jury proceeding before the trial court or on appeal. To the contrary, the District Attorney has conceded that there are "no criminal charges pending" against Guerrero. Similarly, the District Attorney has not claimed that there is any sensitive information in the wiretap materials, such as the identity of an informant, or information related to another open investigation, such that disclosure could jeopardize current or future investigations.

Additionally, in light of the government's interest when considering a motion to inspect, where appropriate, a court may require redactions, in camera review, or both, if doing so would promote the balance between law enforcement and privacy our elected officials had in mind when passing Title III and California's wiretap statutes. (See *Pack v. Kings County Human Services Agency* (2001) 89 Cal.App.4th 821, 837 [noting that in camera review "is routinely used when a judicial decision concerns information claimed to be covered by some rule of confidentiality or privilege"]; *Stoddard v. United States*, *supra*, 710 F.2d at pp. 23-24.)

### 3. Other Intercepted Persons' Interests

Given the federal and California statutes' concern for privacy, a trial court evaluating a motion under section 629.68 should also consider the interests of

23

nonmovants whose conversations were intercepted or for whom wiretap orders were sought. Thus, for instance, when a wiretap application involves multiple targets, some of whom do not seek to inspect under section 629.68, the privacy interests of those nonmovant targets may dictate that their information remain sealed absent a sufficient justification (such as consent). Here, Wiretap Order No. 15-409 targeted Guerrero's phone as well as two others, so even if the trial court finds that allowing Guerrero to inspect the portions of the wiretap application pertaining to him is in the interest of justice, a different analysis might well apply to those portions pertaining only to others. A similar analysis would apply to the orders and intercepted communications themselves.[12]

That same consideration for intercepted nonmovants, however, should take into account the fact that disclosure is being sought not by a general member of the public, but by someone who was often on the other end of the line. Although we have not discovered cases suggesting that intercepted nonmovants regularly raise privacy concerns when a criminal *defendant* receives a copy of intercepted communications, such persons may nevertheless have, and raise, legitimate privacy concerns, whether or not the wiretap target eventually becomes a criminal defendant. For now, we believe that the procedures currently in place for protecting third party privacy in criminal cases provide adequate protection here. (See § 629.70, subds. (b), (d) [although prosecution must generally

---

[12] At a minimum, this counsels against a court issuing a blanket finding pertaining to all information contained in any application, order, or intercepted communication relating to a wiretap, without close consideration of any request to seal or redact portions.

24

provide defendant "a copy of all recorded interceptions from which evidence against the defendant was derived," "[a] court may issue an order limiting [such] disclosures . . . upon a showing of good cause"].)[13] As is the case when considering the government's interest, protection of these third party interests may require in camera review, redactions, or both.

### 4. The Public's Interest

Finally, the trial court should consider the public's interest in allowing a movant to inspect wiretap materials concerning him. Crucially, this interest does not emanate from any desire on behalf of the public to make such materials broadly available. Rather, the nature of the interest here stems from the importance of public confidence in the criminal justice system. (See *People v. Rhodes* (1974) 12 Cal.3d 180, 185 ["It is essential that the public have absolute confidence in the integrity and impartiality of our system of criminal justice."]; cf. *Batson v. Kentucky* (1986) 476 U.S. 79, 87 ["Selection procedures that purposefully exclude black persons from juries undermine public confidence in the fairness of our system of justice."]; *Press-Enterprise Co. v. Superior Court of California, Riverside County* (1984) 464 U.S. 501, 508 [public access to trials "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system"].) As noted above, the anomalous number of wiretaps

---

[13] We express no view as to whether "good cause" in the context of section 629.70, subdivision (d) has the same meaning as in the context of section 629.68. (See *In re Lucas*, *supra*, 53 Cal.4th at p. 849 [the definition of "good cause" "'varies with the context in which it is used"].)

25

approved by judges in Riverside County in 2014 and 2015 has elicited scrutiny from judges and journalists.  (See *United States v. Mattingly*, *supra*, 2016 U.S. Dist. LEXIS 86489, at p. *27; Heath and Kelman, *Justice officials fear nation's biggest wiretap operation may not be legal*, USA Today (Nov. 11, 2015) <https://www.usatodaycom/ story/news/2015/11/11/dea-wiretap-operation-riverside-california/75484076/>.)

In addition, public confidence in the criminal justice system and the appearance of fairness can be damaged not only by actual impropriety, but the possibility of impropriety as well.  (See *People v. Rhodes*, *supra*, 12 Cal.3d at p. 186 ["Even the appearance of . . . impropriety could operate to weaken the public's confidence in the system of criminal justice."].)  Courts considering motions to inspect pursuant to section 629.68 should therefore not require proof of actual misconduct as a prerequisite.  Here, the trial court discounted the significance of the high number of wiretaps at the hearing on the section 629.68 motion, stating, "I understand that you're concerned about the great number in Riverside County, but there has never been any finding, that I am aware of, that something nefarious was happening.  So all you're asking me to do is consider the statistics."  In our view, requiring a preexisting finding of "nefarious" activity would place too high a burden on a movant, given the role the civil cause of action is meant to play against unlawful government intrusion.  Instead, it is more appropriate to consider whether evidence such as "the statistics" help a movant make an initial showing that constitutional safeguards may have been violated, which would then bear on whether inspection would be in the interests of justice.  In analogous contexts, courts have always

had the ability to infer, at an initial stage, a *likelihood* of harm given the numbers, such as when determining whether a juror was impermissibly excused on a racial basis. (See *Flowers v. Mississippi* (2019) 588 U.S. __ [139 S.Ct. 2228, 2235, 2245] [*Batson v. Kentucky* (1986) 476 U.S. 79 violation found in part because "[t]he numbers speak loudly": "the State employed its peremptory challenges to strike 41 of the 42 black prospective jurors that it could have struck"].) To say a trial court may consider statistics in these situations is simply to say a court can consider circumstantial evidence or the totality of the circumstances.[14]

## C. *Guerrero's First Amendment Claim*

Guerrero, as well as amicus, contend that the public has a qualified right of access to the wiretap materials under the First Amendment. It is a ""'"well-established principle"'"" however, that courts should ""'"not decide constitutional questions where other grounds are available and dispositive of the issues of the case."'"" (*Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230; see also *Lyng v. Northwest Indian Cemetery Protective Ass'n* (1988) 485 U.S. 439, 445 ["A fundamental and long-standing principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."].) Because our resolution of the statutory issue is dispositive of the matter before us at this point, we decline to address the constitutional claim.

---

[14] We do not mean to suggest that the trial court should make any particular finding based on the evidence that has been presented so far here.

## III. DISPOSITION

The order denying Guerrero's motion for inspection pursuant to section 629.68 is reversed. The matter is remanded to the trial court with directions to reconsider the motion in a manner not inconsistent with this opinion. Guerrero is awarded his costs on appeal.

CERTIFIED FOR PUBLICATION

RAPHAEL_____
J.

We concur:

MILLER_____
Acting P. J.

SLOUGH_____
J.

28